**WE THE PEOPLE, INC., OF THE
UNITED STATES, et al.,
Plaintiffs,**

v.

**NUCLEAR REGULATORY
COMMISSION, et al.,
Defendants.**

**Civ. A. No. 89–873.**

United States District Court,
District of Columbia.

Sept. 19, 1990.

of limitations period applicable to damage actions brought in District Court, the outcome would be the same.

Ernest C. Hadley, Wareham, Mass., for plaintiffs.

Bradley Kelly, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### I. *Introduction*

In this action, plaintiffs, We the People, Inc., of the United States ("We the People") and Stephen B. Comley, allege that defendants, the Nuclear Regulatory Commission ("NRC") and its chairman, have violated their first amendment right to free expression by banning their display of political posters and bumper stickers at public NRC meetings. Before the Court are the parties' cross-motions for summary judgment.

### II. *Background*

We the People, a non-profit corporation organized under the laws of Massachusetts, monitors and investigates the operation of domestic nuclear power plants and the activities of the NRC. It provides the public with information concerning "the construction and operation of nuclear power plants," and apprises the NRC and other federal and state agencies of "possible safety violations in the nuclear power industry." Articles of Organization, Ex. 1, Pls. Mot. Comley, We the People's executive director, is and has been a critic of the NRC.

The essential facts are not in dispute. On September 8, 1988, the NRC held a public meeting at its Rockville, Maryland, offices. At this meeting, the NRC considered and voted on a proposed change to its emergency planning regulations. Comley attended the meeting, and sat in full view of the NRC's five Commissioners. At the direction of Victor Stello, former executive director for NRC operations, two security guards kept Comley under surveillance.[1]

Once the meeting began, Comley displayed a poster bearing the words "Stop Chernobyl Here" and urging observers to join We the People "in order to form a more perfect Union."[2] The poster measured 18 inches wide and 25 inches long. In displaying it, Comley did not speak.

One of the security guards promptly banned the display. In so doing, he informed Comley that display of posters at public meetings violated a 1940s regulation. Comley was permitted to return to the meeting without displaying the poster. After resuming his seat, he displayed a large reproduction of the Constitution. The reproduction measured 13.5 inches wide and 15.5 inches long. NRC officials allowed Comley to display this reproduction for the rest of the meeting.

On October 14, 1988, Comley attended another public meeting at the NRC's Rockville offices. The subject of the meeting was the proposed restart of Pilgrim Station at Plymouth, Massachusetts. Once the meeting convened, Comley displayed the "Stop Chernobyl Here" poster, as well as "Stop Chernobyl Here" bumper stickers. In displaying these items, Comley did not speak. Security guards promptly ejected Comley from the meeting and did not permit him to return.

Comley, through counsel, protested this ejection in a letter dated November 7, 1988 to the NRC's chairman. Comley requested that the NRC identify the legal authority

---

1. Comley had previously called for Stello's resignation. In addition, following an encounter with Stello at a February 1987 NRC meeting, Comley had lodged a written complaint against him with the NRC's chairman. At the September 8, 1988, meeting, Stello brought Comley's presence to the attention of the NRC's director of security, who in turn directed the guards to keep Comley under surveillance.

2. The poster provided the addresses and telephone numbers of three We the People offices, and identified the corporation as a tax deductible, non-profit organization.

on which it relied to eject individuals displaying posters from its public meetings. In a letter dated November 28, 1988, NRC General Counsel William Parler, on behalf of the chairman, responded: "[I]t is the Commission's responsibility to conduct its meetings in an orderly fashion. The displaying of signs and posters in the meeting room is disruptive not only to the Commissioners but to the other meeting participants." Letter from William C. Parler to Ernest C. Hadley (Nov. 28, 1988) at 1 [hereinafter Parler Letter], Ex. 5, Pls. Mot. Parler explained that the General Services Administration ("GSA") had promulgated regulations governing the use of public buildings and grounds. The following regulation, he alleged, prohibited Comley from "holding up signs:"

> Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

41 C.F.R. § 101–20.305 (1989); *see* Parler Letter at 1, Ex. 5, Pls. Mot.[3]

Several weeks after receiving this letter, on or about December 21, 1988, Comley attended a third public NRC meeting in Rockville. The meeting concerned evacuation planning for Pilgrim Station. This time, security guards required Comley to relinquish his "Stop Chernobyl Here" posters and bumper stickers before allowing him to enter the meeting room. After the meeting began, Comley, having taken a seat at the front of the room, removed his sport jacket, shirt, and tie. Underneath he wore a "Stop Chernobyl Here" tee-shirt.

The tee-shirt also exhorted others to "Join We the People" and contained a reproduction of the Constitution. The NRC allowed Comley to remain in the meeting room while wearing this tee-shirt.

On or about March 29, 1989, Comley attended a public meeting of the Atomic Safety and Licensing Board ("ASLB"), a division of the NRC, in Boston, Massachusetts. The meeting concerned emergency evacuation planning for Seabrook Station in Seabrook, New Hampshire. Comley carried a small bag with him when he entered the meeting room. During a recess, a security officer named McGee approached him. McGee stated that he knew who Comley was and that he was acting on the direction of ASLB Judge Ivan Smith. McGee told Comley that he could not re-enter the meeting room with the small bag. Comley objected to the prohibition, since other members of the public had been allowed to enter the meeting room with briefcases, purses, and other such items. He also invited McGee to inspect the contents of the bag. McGee declined to inspect the contents of the bag, and Comley ultimately re-entered the meeting room without his bag.

The NRC's "A Guide to Open Meetings" ("Guide") states that, pursuant to the Government in the Sunshine Act, 5 U.S.C. § 552b(b) (1988), Commission meetings are generally open to the public. *See* NRC Guide, Ex. 7, Pls. Mot. The Guide also sets out the following standard "for behavior in the Commission meeting room":

> Commission meetings are open for the public to observe. Members of the public are not allowed to participate in Commission deliberations unless specifically requested to participate by the Commission.... [D]isorderly conduct or other conduct, including the display of signs and posters, which creates loud or un-

---

**3.** Parler also relied on 41 C.F.R. § 101–20.304, which requires "[p]ersons in and on [federal] property" to "comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals." Parler noted that the disorderly conduct regulation

set out in the text above was posted at the entrance to the NRC's Rockville headquarters, and that Comley had been informed by security officers on several occasions that he could not display signs or distribute literature during public NRC meetings. *See* Parler Letter at 1–2, Ex. 5, Pls. Mot.

usual noise or a nuisance, impedes or disrupts the performance of official duties by the Commission or its staff or interferes with the orderly conduct of the scheduled presentations may result in expulsion from the meeting room.

*Id.* (citing 41 C.F.R. § 101–20.305). On several occasions, Comley, in his capacity as executive director of We the People, has requested permission to participate in NRC meetings. The NRC has denied all of his requests.

### III. *The Cross–Motions for Summary Judgment*

This is a close case, the facts of which are not in dispute. Plaintiffs contend that the NRC's ban on the peaceful display of posters bearing political messages constitutes an unlawful restraint on freedom of speech. Plaintiffs do not mount a facial attack on 41 C.F.R. § 101–20.305, the GSA regulation on which defendants rely. Instead, they argue that the regulation is unconstitutional as applied by defendants. Defendants have cross-moved for a ruling that their conduct comports with the first amendment.

### A. Standards Applicable to Summary Judgment

We begin our discussion with a review of the standards governing entry of summary judgment. Rule 56(c), Fed.R.Civ.P., "mandates the entry of summary judgment, after adequate time for discovery ..., against a party who fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To survive a motion for summary judgment, the opposing party must demonstrate that a *"genuine* issue" exists as to each such element. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

An issue is not "genuine" unless a rational trier of fact, taking the record as a whole, could resolve it in favor of either side. *See id.* at 250, 106 S.Ct. at 2511; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). If evidence favoring the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). An opposing party may not rely on "mere allegations or denials ..., but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (citation omitted).

### B. First Amendment Analysis

■ Turning now to the underlying controversy, we first must decide whether Comley's display of "Stop Chernobyl Here" posters and bumper stickers at public NRC meetings is speech normally protected by the first amendment. *Cornelius v. NAACP Legal Defense & Educational Fund,* 473 U.S. 788, 797, 105 S.Ct. 3439, 3446, 87 L.Ed.2d 567 (1985). Plaintiffs bear the burden of proof on this issue, *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221 (1984), and they clearly have met it. "[S]igns or displays critical of" government action fall squarely within the realm of "classically political speech." *See Boos v. Barry,* 485 U.S. 312, 318, 319, 108 S.Ct. 1157, 1162, 1162–63, 99 L.Ed.2d 333 (1988). In displaying, or attempting to display, "Stop Chernobyl Here" posters at open NRC meetings concerning emergency planning regulations (September 8, 1988), the restart of Pilgrim Station nuclear power plant (October 14, 1988), and evacuation planning for Pilgrim Station (December 21, 1988), Comley obviously was communicating, or attempting to communicate, a message on an issue of public concern.[4] Defendants, in fact, con-

---

**4.** The Court takes judicial notice of the recent nuclear reactor disaster at the U.S.S.R.'s Cher- nobyl plant.

cede that Comley's activity constitutes protected speech. *See* Local Rule 108(h).

Having decided this threshold issue does not answer the problem. We next "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius*, 473 U.S. at 797, 105 S.Ct. at 3446. The government may exclude speakers from a public forum only when the exclusion is both "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest." *Id.* at 800, 105 S.Ct. at 3448 (citing *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983)). The government may restrict access to a nonpublic forum, however, provided "the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* 473 U.S. at 800, 105 S.Ct. at 3448 (quoting *Perry*, 460 U.S. at 46, 103 S.Ct. at 955–56).

 We have no difficulty in concluding that Comley sought access to a nonpublic forum. Obviously, the NRC meeting room is not a "traditional public forum," a place " 'by long tradition or by government fiat ... devoted to [public] assembly and debate.'" *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449 (quoting *Perry*, 460 U.S. at 45, 103 S.Ct. at 954). Although plaintiffs concede as much, they argue that the meeting room is a "public forum created by government designation." *Id.* This argument cannot withstand scrutiny.

"The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Id.* (citing *Perry*, 460 U.S. at 46, 103 S.Ct. at 955–56). Congress, when it passed the Sunshine Act, 5 U.S.C. § 552b, manifested no such intention. To the contrary, it required only that federal agency meetings "be open to public *observation*." 5 U.S.C. § 552b(b) (emphasis added). The Act was designed to make available to the public, to the fullest extent practicable, "information regarding the decisionmaking processes of the Federal Government." H.R.Rep. No. 880, 94th Cong., 2d Sess., pt. 1, at 7 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News (94 Stat.) 2183, 2188. Simply put, public discourse was not a goal. The NRC has construed the Act accordingly, and has not opened its meeting room to public debate. *See* 10 C.F.R. § 9.103 (1989) (Although meetings shall be open "for public observation," "[n]o additional right to participate ... is granted...."); *see also* NRC Guide, Ex. 7, Pls. Mot.

In the face of this evidence, we will not infer that either Congress or the NRC has designated the NRC meeting room as a public forum. *See Cornelius*, 473 U.S. at 803, 105 S.Ct. at 3449–50 (citations omitted). An examination of the nature of the NRC meeting room fortifies this conclusion. The meeting room "exists to accomplish the business of the" NRC. *Id.* at 805, 105 S.Ct. at 3451 (citation omitted); *see* NRC Guide, Ex. 7, Pls. Mot. It follows that the NRC may "exercise control over access to" its meeting room "in order to avoid interruptions to the performance of [its] duties...." *Cornelius*, 473 U.S. at 806, 105 S.Ct. at 3451 (citation omitted). Accordingly, we hold that the NRC meeting room is a nonpublic forum.

Having reached this conclusion, we now turn to the third and final inquiry in our analysis: Are the NRC's restrictions on plaintiffs' expressive activity both reasonable and viewpoint-neutral? *See id.* at 800, 105 S.Ct. at 3447–48 (citing *Perry*, 460 U.S. at 46, 103 S.Ct. at 955–56). On these issues, defendants bear the burden or proof. *See, e.g., Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (citations omitted), *appeal dismissed, cert. denied*, 475 U.S. 1134, 106 S.Ct. 1784, 90 L.Ed.2d 330 (1986).

 "The reasonableness of the [NRC's] restriction ... must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809, 105 S.Ct. at 3453. In their briefs, defendants contend that they prohibited Comley from displaying the "Stop Chernobyl Here" poster because the poster was "visually disruptive." Dfs.

Mem. at 10–11. In light of the purpose of public NRC meetings, we find this posited justification, if true, to be reasonable. The meetings are designed to allow the public to observe the decision-making processes of the NRC. If the display of a poster either impedes the public's observation, or disrupts the decision-making process of the Commission, the NRC may exclude that activity, with this important condition: the exclusion must be viewpoint-neutral. *Cornelius*, 473 U.S. at 811, 105 S.Ct. at 3453–54; *see* 41 C.F.R. § 101–20.305 (prohibiting conduct that "impedes or disrupts the performance of official duties ... or prevents the general public from obtaining the administrative services provided on the property in a timely manner"); NRC Guide, Ex. 7, Pls. Mot. (prohibiting "conduct, including the display of signs and posters, which ... impedes or disrupts the performance of official duties by the Commission or its staff or interferes with the orderly conduct of the scheduled presentations").

However, a reasonable justification for excluding a particular type of activity "cannot save an exclusion that is in fact based on the desire to suppress a particular point of view." *Cornelius*, 473 U.S. at 812, 105 S.Ct. at 3454 (citation omitted). We underscore that defendants bear the burden of proving that their ban on plaintiffs' display was viewpoint-neutral. *See, e.g., Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. at 777, 106 S.Ct. at 1564 (citations omitted). Upon examination of the entire record, we hold that defendants have failed to demonstrate that a genuine issue exists as to this fact. We find that defendants' acts in banning plaintiffs' display were not viewpoint-neutral. *See Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted). Accordingly, plaintiffs' motion for summary

judgment must be granted, and defendants' cross-motion must be denied.

It is undisputed that at the September 8, 1988, meeting, NRC security guards prevented Comley from displaying an 18 by 25 inch "Stop Chernobyl Here" poster, yet allowed him to display a 13.5 by 15.5 inch reproduction of the Constitution. This difference in size forms the crux of defendants' argument. It is evidence, defendants maintain, that the "Stop Chernobyl Here" poster was banned not because of its message, but because of its size.

The discrepancy in size between the two posters is virtually the only evidence on which defendants rely.[5] Although somewhat helpful to defendants, it is a thin reed on which to rely and is insufficient, in light of the record as a whole, to allow a trier of fact to return a verdict in their favor. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510 (citation omitted); *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted). As an initial matter, we note the complete absence of any additional evidence demonstrating that the "Stop Chernobyl Here" poster did, or would have, "visually disrupt[ed]" NRC meetings. No Commissioner, member of the NRC staff, or attendee has testified that the poster obstructed his view or distracted him from the business of the September 8, 1988, meeting. Nor has any witness testified that the reproduction of the Constitution was not "visually disruptive." Defendants may not avoid summary judgment simply by relying on "mere allegations or denials;" instead, they "must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added); *see Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510 (citation omitted).

Moreover, too much evidence weighs against defendants for a rational trier of fact to return a verdict in their favor. Pri-

5. They also point to the fact that Comley was permitted to wear a "Stop Chernobyl Here" tee-shirt throughout the December 21, 1988, meeting. This evidence is "[in]significantly probative" of whether the NRC applies its ban on the display of posters in a viewpoint-neutral manner. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *see infra; see also* NRC Guide, Ex. 7, Pls. Mot. (devoid of any restrictions on mode of dress). The Supreme Court has held as a matter of law that the wearing of symbolic clothing is "nondisruptive speech." *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575, 576, 107 S.Ct. 2568, 2572, 2572–73, 96 L.Ed.2d 500 (1987). Thus, it cannot be banned, even in a nonpublic forum. *Id.*

or to filing their cross-motion, defendants never proclaimed a policy of banning posters based on size. To the contrary, when the security guard forbade Comley from displaying the "Stop Chernobyl Here" poster at the September 8, 1988, meeting, he told him, simply, "that display of posters at public meetings violated a [federal] regulation...." Jt.Stip. of Facts ¶ 15. Furthermore, NRC General Counsel Parler, in explaining the NRC's purported basis for ejecting Comley from the October 14, 1988, meeting, issued the following blanket statement: "The display of signs and posters ... is disruptive not only to the Commissioners but to the other meeting participants." Parler Letter at 1, Ex. 5, Pls. Mot.

In addition, it is undisputed that at the December 21, 1988, meeting, NRC security guards prohibited Comley from entering the meeting room with either "Stop Chernobyl Here" posters or bumper stickers. A bumper sticker is significantly smaller than the reproduction of the Constitution that Comley had been permitted to display at the September 8, 1988, meeting. If display of this reproduction was not "visually disruptive," then *a fortiori* display of a bumper sticker would not be either. Defendants have offered no explanation for the December 21 incident. We emphasize once again that it is their burden to demonstrate viewpoint-neutrality. *See, e.g., Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. at 777, 106 S.Ct. at 1564 (citations omitted). Their silence on this point hardly fits the bill.

Finally, it appears that NRC officials treated Comley differently from other meeting attendees, and that this difference in treatment was based on Comley's views, which no doubt were irritating and annoying. At the March 29, 1989, ASLB meeting, security officer McGee, acting on the direction of ASLB Judge Ivan Smith, prevented Comley from taking a small bag with him into the meeting room. Both McGee and Smith were aware of who Comley was. It is undisputed that Comley was singled out; other attendees were permitted to carry briefcases, purses, and similar items into the meeting room. Despite the obvious implications of this incident, defendants once again have made no effort to explain it. The incident is further evidence that defendants prevented Comley from engaging in protected speech because they did not like his message.

In summary, the record as a whole supports only one conclusion—that defendants' conduct with respect to Comley was viewpoint-based, and thus unconstitutional under the first amendment. No rational trier of fact could find that defendants have proved otherwise. *See Shields v. Eli Lilly & Co.*, 895 F.2d 1463, 1465 (D.C.Cir.1990). Defendants' argument based on the claim that plaintiffs' signs because of size were unusually disruptive is pure make weight. Accordingly, "there is no 'genuine issue for trial,'" and plaintiffs are entitled to summary judgment. *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511.

### IV. *Conclusion*

Based on the foregoing, we hold that: plaintiffs' display of "Stop Chernobyl Here" posters and bumper stickers is protected speech under the first amendment; the NRC public meeting room in Rockville, Maryland, is a nonpublic forum; a prohibition on the display of visually disruptive posters or signs at public NRC meetings is a reasonable restriction on protected speech; and defendants, "after adequate time for discovery," have failed "to make a showing sufficient to establish" that their particular ban on the display of plaintiffs' "Stop Chernobyl Here" posters and bumper stickers was "viewpoint-neutral." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Cornelius*, 473 U.S. at 811, 105 S.Ct. at 3453–54. Since defendants bear the burden of proof on this issue, *see, e.g., Philadelphia Newspapers*, 475 U.S. at 777, 106 S.Ct. at 1564 (citations omitted), Rule 56(c), Fed.R.Civ.P., "mandates the entry of summary judgment" against defendants and in favor of plaintiffs. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

An Order consistent with the foregoing has been entered this day.

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, the oppositions thereto, and the entire record herein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is by the Court this 18th day of September, 1990,

ORDERED that plaintiffs' motion for summary judgment is granted; it is

ORDERED that defendants' cross-motion for summary judgment is denied; and it is

FURTHER ORDERED that this case is dismissed with prejudice.