**22-664-cv**
*Tyler v. Kingston*

$$\text{In the}$$
$$\text{United States Court of Appeals}$$
$$\text{For the Second Circuit}$$

————

AUGUST TERM 2022

ARGUED: OCTOBER 27, 2022
DECIDED: JULY 18, 2023

No. 22-664-cv

RASHIDA TYLER, ANNE AMES, BEETLE BAILEY, PHILIP ERNER, RACHEL GANS, KATRINA HOUSER, LISA ROYER, AMANDA SISENSTEIN, KIM WHEELER,

*Plaintiffs-Appellants*,

*v.*

CITY OF KINGSTON,

*Defendant-Appellee.*

————

Appeal from the United States District Court for the Northern District of New York.

————

Before: WALKER, LEE, AND ROBINSON, *Circuit Judges*.

————

Plaintiffs-Appellants bring a First Amendment challenge to the City of Kingston's prohibition against bringing signs and posters into public meetings of the Common Council held at Kingston City Hall.

The City moved to dismiss, arguing that Common Council meetings are limited public fora in which the City is permitted to reasonably restrict speech that undermines the purpose for which the forum had been opened.  The district court granted the City's motion, noting that government entities are permitted to regulate the manner in which the public participates in limited public fora.   The district court concluded that Plaintiffs had not adequately alleged that the City's sign prohibition was unreasonable in light of the potential disruption or distraction that signs at Common Council meetings might pose. We **AFFIRM** the judgment of the district court.

————

STEPHEN BERGSTEIN, Bergstein & Ullrich LLP, New Paltz, NY, *for Plaintiffs-Appellants*.

MICHAEL T. COOK, Cook, Netter, Cloonan, Kurtz & Murphy, P.C., Kingston, NY, *for Defendant-Appellee*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs-Appellants bring a First Amendment challenge to the City of Kingston's prohibition against bringing signs and posters into public meetings of the Common Council held at Kingston City Hall. The City moved to dismiss, arguing that Common Council meetings are limited public fora in which the City is permitted to reasonably restrict speech that undermines the purpose for which the forum had been opened.  The district court granted the City's motion, noting that government entities are permitted to regulate the manner in which the public participates in limited public fora.   The district court concluded that Plaintiffs had not adequately alleged that the City's sign prohibition was unreasonable in light of the potential disruption

2

or distraction that signs at Common Council meetings might pose. We **AFFIRM** the judgment of the district court.

## BACKGROUND

### I.    Factual Background[1]

Plaintiffs—Anne Ames, Beetle Bailey, Philip Erner, Rachel Gans, Katrina Houser, Lisa Royer, Amanda Sisenstein, Rashida Tyler, and Kim Wheeler—are nine political and community activists affiliated with "Rise Up Kingston" and "Wednesday Walks 4 Black Lives," organizations "focused on police misconduct and diversity issues."  J. App'x at 8.

On August 3, 2021, the Kingston Common Council was scheduled to hold a public meeting at Kingston City Hall to discuss whether the City would purchase an armored rescue vehicle.  Eight of the Plaintiffs—that is, all Plaintiffs except Philip Erner—planned to attend the meeting to protest the proposed purchase, and they brought signs to City Hall demonstrating their opposition to such purchase.  These signs were neither vulgar nor obscene.  For example, two of the signs read "No Tanks No Thanks!" and "Oh my God! No Tank! Move on!!"  *Id.* at 8, 12–13.  Some of the signs were displayed on large cardboard posters.  Others were in the form of life-sized puppets.

When these Plaintiffs entered City Hall with their signs, police officers informed them that, under a rule adopted by the Common Council a few days earlier, signs were prohibited in the City Hall

---

[1] The following facts are drawn from the allegations in and documents attached to the Complaint and are taken as true for purposes of this appeal.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010).

building and in Common Council meetings held within the building. Notices to that effect were posted in the building:

> ATTENTION: No signs or posters allowed inside the building. Interruption of speakers and/or government business will not be tolerated. Anyone who interrupts a speaker or the proceedings of a government meeting shall be removed.

*Id.* at 8, 17–18. Plaintiff Katrina Houser, who reportedly felt "intimidated by the police," declined to enter the meeting without her sign. *Id.* at 9. The remaining seven Plaintiffs attended the meeting without their signs.

On August 11, 2021, the ninth Plaintiff—Philip Erner—sought to attend a Common Council meeting that was to address a proposal to install surveillance cameras throughout the City. Erner and other activists were not permitted to enter the building with their signs.

## II.    Procedural History

Plaintiffs brought this action against the City on January 3, 2022, asserting that the City's sign prohibition violated the First Amendment. The City moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Common Council meetings are limited public fora in which the City is permitted to reasonably restrict speech that falls outside the "types of speech" for which the forum had been opened. J. App'x at 29 (quoting *Hotel Emps. & Rest. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002)).

On March 16, 2022, the district court (David N. Hurd, *J.*) granted the City's motion. *See Tyler v. City of Kingston*, 593 F. Supp. 3d 27 (N.D.N.Y. 2022). The district court began by noting that

4

government entities are permitted to regulate the manner or form of speech in limited public fora, including city council meetings, as long as such restrictions on speech are viewpoint neutral and reasonable. *See id.* at 31–32.

Turning to the viewpoint neutrality inquiry, the district court rejected Plaintiffs' argument that the timing of the sign prohibition—instituted days before the August 3, 2021 meeting[2]—indicated that it discriminated based on viewpoint. *Id.* at 32. The district court noted that the sign prohibition applied to all signs; the sign prohibition remained in effect after the August 3, 2021 meeting; and Plaintiffs did not allege that the sign prohibition was selectively enforced or that the use of signs was more important to Plaintiffs' cause than to their opponents. *Id.*

Finally, with respect to reasonableness, the district court found that, although this issue "presents the closest call of all the parties' arguments," Plaintiffs had failed to plausibly allege that the sign prohibition was unreasonable in relation to the purpose of the forum. *Id.* at 33. Specifically, the district court noted that Common Council meetings have only one purpose—that is, allowing the Common Council to "discuss and decide local issues while giving the public access to that process"—and excluding signs from such meetings is "reasonably related to keeping the tenor of the meetings from devolving into a picketing session inside City Hall." *Id.* at 33–34.

This appeal followed.

---

[2] Plaintiffs alleged that the sign ban was instituted because the Common Council knew Plaintiffs and others would attend the August 3, 2021 meeting to protest. However, the impetus for adopting the sign ban would speak to viewpoint discrimination. And, as discussed *infra* note 3, Plaintiffs have waived their viewpoint discrimination argument by failing to pursue it on appeal.

## DISCUSSION

"We review de novo the dismissal of a complaint for failure to state a claim upon which relief can be granted." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On appeal, Plaintiffs argue that the district court erred because (1) the City may not restrict certain forms of speech while permitting other forms of speech on the same topic; and (2) the sign prohibition is unreasonable because the City's proffered interest in avoiding disruption or distraction is speculative, and the sign prohibition is not narrowly tailored to that interest.[3] For the reasons that follow, we reject each of these arguments.

## I. Restrictions on the Form or Manner of Speech in a Limited Public Forum

We analyze speech restrictions on publicly owned property according to a forum-based approach. Under this approach, "[f]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum." *R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011); *see*

---

[3] Plaintiffs do not challenge the district court's determination regarding their failure to adequately allege viewpoint discrimination. Accordingly, any argument premised on Plaintiffs' allegations of viewpoint discrimination has been waived.

*also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797, 799–800 (1985).

Here, there is no dispute that the Common Council meetings at issue are limited public fora. *See Hotel Emps.*, 311 F.3d at 552 ("[A] limited public forum is created when the government opens a non-public forum for public expression, but limits expressive activity to certain kinds of speakers or the discussion of particular subjects.").

"[I]n a limited public forum, [the] government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Id.* at 545–46 (quoting *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991)). For "expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable." *Id.* at 546. "[S]trict scrutiny is accorded only to restrictions on speech that falls within the designated category for which the forum has been opened." *Id.* at 545. Otherwise, such restrictions are "subject to only minimal constitutional scrutiny." *Bronx Household of Faith v. Cmty. Sch. Dist. No. 10*, 127 F.3d 207, 212 (2d Cir. 1997) (internal quotation marks omitted).

The district court observed that, in a limited public forum, "[t]he Second Circuit . . . only requir[es] that the public be permitted to speak on the same issue that the limited public forum is meant to address[, but that] the government is still permitted to regulate how that speech is delivered." *Tyler*, 593 F. Supp. 3d at 31. Plaintiffs argue that the district court erred because this Court has "not expressly drawn [a] distinction" between regulating the subject matter of speech and regulating the manner in which such speech is delivered. Plaintiffs' Br. at 12. According to Plaintiffs, because the Common Council allocated time for public comment—verbal and written—

during the August 3, 2021 meeting,[4] the Common Council was also required to permit Plaintiffs to engage in "silent[]" public comment on matters on the agenda through the use of signs. *Id.* at 13. We disagree.

The distinction that the district court drew between the topic of the speech and the form or manner in which such speech is delivered is consistent with our precedents. In *Hotel Employees*, we upheld restrictions on rallies and leafletting at the Lincoln Center Plaza, finding that such restrictions were reasonable "in light of the Plaza's particular and limited function" "as an area singularly dedicated" to entertainment and artistic performances, rather than political or labor-related demonstrations. *See Hotel Emps.*, 311 F.3d at 555–56.

Plaintiffs attempt to distinguish *Hotel Employees* by arguing that the political rallies and leafletting there were "entirely unlike the activities for which . . . Lincoln Center was created," while the signs at issue here address matters directly on the Common Council's agenda. Plaintiffs' Br. at 12. But Plaintiffs miss the point. Even if the signs relate to matters on the Common Council's agenda, they may still undermine the purpose for which the forum was created. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 342 (2d Cir. 2010) (per curiam) ("In a limited public forum, strict scrutiny does not apply to expressive activities outside the general purpose for which the government opened the forum."). And the *form or manner* in which the public participates at Common Council meetings may certainly

---

[4] The Complaint does not address whether attendees of the August 3, 2021 Common Council meeting were able to offer verbal or written comments at the meeting. But the parties apparently agree that we may take judicial notice of this fact from the Common Council's public agenda, which is available on the City's website (https://kingston-ny.gov/Agendas). *See* Fed. R. Evid. 201(b)(2) & (d). It is also apparently undisputed that the Common Council did not entertain public comment during the August 11, 2021 meeting.

undermine the purpose for which the forum was created—*e.g.*, to facilitate meaningful discourse on matters of the legislative agenda. *See Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004) ("Restrictions on speech not within the *type of expression* allowed in a limited public forum must only be reasonable and viewpoint neutral." (emphasis added)); *see also The Good News Club v. Milford Cent. Sch.*, 202 F.3d 502, 510 (2d Cir. 2000) ("[F]or those who seek to speak on a topic *or in a manner* not contemplated by the public entity in opening the limited public forum[,] there is no fundamental right of freedom of speech." (emphasis added) (internal quotation marks omitted)), *rev'd on other grounds Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001).

Suppose the Common Council adopted rules permitting meeting attendees to contribute only by way of written remarks or requiring meeting attendees to limit their verbal remarks to a fixed amount of time. Such restrictions would limit the form or manner of speech, but plainly they would be upheld as reasonable in a limited public forum, and they would not be subject to strict scrutiny. *See Cipolla-Dennis v. Cnty. of Tompkins*, No. 21-712, 2022 WL 1237960, at *2 (2d Cir. Apr. 27, 2022) (finding no First Amendment violation where county legislature required meeting attendee to sign in before attendee was permitted to offer comments at public meeting). Indeed, the application of strict scrutiny in such circumstances would undermine the legal principles governing limited public fora—that such fora are subject to reduced judicial scrutiny—and would appear to apply a higher level of scrutiny than that imposed on time, place, or manner restrictions in public fora. *Cf. Int'l Action Ctr. v. City of New York*, 587 F.3d 521, 527 (2d Cir. 2009) (explaining that content-neutral time, place, or manner restrictions in public fora need only satisfy "intermediate scrutiny," which requires that the restrictions "serve a significant government interest, be narrowly tailored to serve that

interest, and leave open ample alternative channels of communication" (internal quotation marks omitted)); *see also*, *e.g.*, *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) ("The government . . . may restrict the time, place and *manner* of speech [in a limited public forum], as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum."); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) (explaining that the government may regulate the time, place, or manner of speech in limited public fora "with less exacting scrutiny by the courts").

Accordingly, we hold that in limited public fora such as city council meetings, government entities are permitted to restrict the form or manner of speech offered by members of the public, even if such speech addresses the topic or agenda of that forum. Such restrictions on the form of speech are not subject to strict scrutiny; courts need only assess whether the restrictions are reasonable and viewpoint neutral.

With this in mind, we turn next to Plaintiffs' contention that the City's prohibition is unreasonable.

## II.     The Reasonableness of the City's Sign Prohibition

In a limited public forum, the reasonableness analysis turns on the particular purpose and characteristics of the forum and the extent to which the restrictions on speech are "reasonably related" to maintaining the environment the government intended to create in that forum. *See Hotel Emps.*, 311 F.3d at 554 (internal quotation marks omitted). "[T]o survive First Amendment scrutiny[,] the restriction need not be the most reasonable or the only reasonable limitation imaginable," *Byrne v. Rutledge*, 623 F.3d 46, 59 (2d Cir. 2010) (internal quotation marks omitted), but simply "consistent with the

government's legitimate interest in preserving the property for the use to which it is lawfully dedicated," *Hotel Emps.*, 311 F.3d at 554 (internal quotation and alteration marks omitted). Significantly, the existence of "alternative channels" of communication is a relevant factor in assessing the reasonableness of a restriction on speech in a limited public forum. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 53 (1983).

We agree with the district court's conclusion that Plaintiffs have not plausibly alleged that the City's sign prohibition was unreasonable in relation to the City's interest in the forum—namely, "keeping the tenor of [Common Council] meetings from devolving into a picketing session inside City Hall." *Tyler*, 593 F. Supp. 3d at 33; *see id.* at 34 ("[I]t is not unreasonable for Kingston to want to keep its meeting reserved for spoken comment from the public on relevant issues while excluding signs or other demonstrable items that might distract from that intended environment of an efficient discourse.").

Plaintiffs argue that the district court erred because the City's stated interest is "speculative," and a complete ban on signs is not the least restrictive means of furthering such interest. Plaintiffs' Br. at 22. We find these arguments unpersuasive.

In support of their argument that the City's stated interest is "speculative," Plaintiffs note that the Complaint does not allege that they intended to use the signs "for violent and disruptive purposes, and there is no evidence that anyone had previously done this." *Id.* at 23. But while it is true that "prior experience can provide grounds for restrictions on speech," the reasonableness of a restriction may also be determined "with reference to the disruption or distraction that would result if all groups like the group at issue sought access." *Make The Rd. by Walking*, 378 F.3d at 148–49.

11

Plaintiffs also contend that the City's purported interest "raise[s] a factual issue that the parties have yet to develop in discovery, [and which] cannot be resolved on a Rule 12 motion." Plaintiffs' Br. at 22. But, as Plaintiffs acknowledge, courts can take notice of government interests that "ring[] of common-sense." *Hotel Emps.*, 311 F.3d at 554. And many courts have recognized that preventing disruptive activity is a legitimate and common-sense government interest that can justify restrictions on speech in limited public fora. *See id.* ("[A]lthough the defendants did not make a specific showing below with regard to the nature and extent of the disruption that rallies and picketing would cause, the fact that permitting such activities on any variety of topics would interfere with the City's mission in establishing this specialized space rings of common-sense." (internal quotation and alteration marks omitted)); *Make The Rd. by Walking*, 378 F.3d at 148 ("The most common reason [for excluding expression in a nonpublic forum] is that the excluded expression is distracting or disruptive.").

Here, we conclude that Plaintiffs have not adequately alleged that the sign prohibition was unreasonable in relation to the City's common-sense interest in running efficient and orderly meetings. Plaintiffs do not allege that they were disabled from voicing their views at the August 3, 2021 Common Council meeting, nor do they allege that they could not use their signs as part of protest activities on "the public sidewalks surrounding" City Hall. *See Hotel Emps.*, 311 F.3d at 556 (concluding that leafletting restriction was not unreasonable, "especially . . . where neighboring [parks], and the public sidewalks surrounding Lincoln Center, provide ample alternative venues for groups . . . who wish to voice their views"). Indeed, photographs of Plaintiffs' signs (depicted in Exhibit 1 to the Complaint) indicate that Plaintiffs were able to prominently display their signs in the public walkways surrounding City Hall; Plaintiffs'

signs were thus not hidden from council members or attendees of the Common Council meeting, who could easily view the signs as they entered City Hall.

The Complaint contains only two allegations that could be construed as supporting Plaintiffs' claim that the sign prohibition was unreasonable. First, Plaintiffs point out that their signs were "neither obscene, vulgar [n]or disruptive," and, second, they assert that the sign ban was "overbroad" because it was not limited to prohibiting signs that disrupted the meetings. J. App'x 8. However, the signs referenced in Exhibit 1 to the Complaint *do* appear to have the potential for disrupting the orderliness of the proceedings. They include life-sized puppets as well as large (2+ foot-wide) cardboard posters, which—particularly when wielded by many individuals at once—could have been visually disruptive and interfered with the decorum of the meetings. While Plaintiffs claim that signs generally are "less disruptive or intrusive than public comments," Plaintiffs' Br. at 13, this self-serving assertion disregards how different forms of communication can facilitate or undermine the purpose of a forum. For example, verbal or written comments may improve civil discourse by requiring individuals to articulate and defend their positions on the legislative record, while the use of signs may reduce discussion to one-line slogans.

Plaintiffs insist that their signs should be analogized to "clothing, buttons, or hats with political messages," which can be viewed during the duration of the meetings without disruption. *Id.* at 27–28. Plaintiffs also cite *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) for the proposition that the sign prohibition unlawfully "silenced Plaintiffs who would have otherwise displayed their signs and posters for the duration of the meeting, even following the public comments." Plaintiffs' Br. at 31. But we easily discern a difference between such small, personal items as clothing, buttons, and hats and

13

signs and posters (which tend to be larger and more distracting).  *See Bd. Of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (noting that the wearing of symbolic clothing is "nondisruptive speech"); *see also Cohen v. California*, 403 U.S. 15 (1971).  Plaintiffs are also mistaken in their assertion that they have a right to offer silent public comment throughout Common Council meetings.  *Norse v. City of Santa Cruz*—in which the plaintiff challenged his ejection from a city council meeting for giving a Nazi salute after the public comment period had closed—does not support Plaintiffs' argument on this point.  *See Norse*, 629 F.3d at 970.  That case concerned viewpoint discrimination, *see id.* at 976, which is not at issue here; the case does not stand for the principle that members of the public have a right to offer comment in any form they desire throughout public meetings.

The argument that the sign prohibition is unreasonable because it is not the least restrictive means of furthering the City's interest is likewise meritless.  In a limited public forum, a reasonable restriction "need not be the most reasonable or the only reasonable limitation." *Make The Rd. by Walking*, 378 F.3d at 147 (internal quotation marks omitted).  Here, although the Common Council could have instituted more narrow restrictions on signs—such as confining sign-holders to designated areas of the room, limiting the types and sizes of signs that could be brought, or removing disruptive sign holders—the First Amendment, under the reduced level of scrutiny applicable in a limited public forum, does not require the Common Council to have done so.[5]

---

[5] Many district courts have upheld similar sign prohibitions at public meetings. *See Madsen v. City of Lincoln*, 574 F. Supp. 3d 683, 697–98 (D. Neb. 2021) (prohibition on "posting signs" in city council chamber was intended to "expedite [the] business" of the city council); *Hunt v. City of Los Angeles*, No. CV 12-7261 (DSF), 2012 WL 12548355, at *7–9 (C.D. Cal. Dec. 6, 2012) (prohibition on displaying

In sum, the Complaint itself and common sense offer a satisfactory rationale for the City's sign prohibition, which undermines Plaintiffs' assertions of unreasonableness. To be sure, there may be cases where restrictions on the form or manner of speech—including the use of signs—in a limited public forum would be unreasonable, but Plaintiffs have not pled such facts here.

## CONCLUSION

We have considered Plaintiffs' remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

"signs, placards, and banners" at public board meetings was "enacted to protect the Board's legitimate interest in running efficient and orderly meetings"); *We the People, Inc., of the U.S. v. Nuclear Regulatory Commission*, 746 F. Supp. 213, 216–19 (D.D.C. 1990) (Nuclear Regulatory Commission's sign prohibition at public meetings was reasonable in light of the meetings' purpose, but Commission's selective enforcement of the prohibition indicated that the prohibition was viewpoint-based).