**Ronald J. VACCA, Plaintiff,**

v.

**David BARLETTA, et al., Defendants.**

**Cⁱ. . A. No. 89–1669–S.**

United States District Court,
D. Massachusetts.

Dec. 12, 1990.

Joseph T. Doyle, Jr., Lecomte, Emanuelson, Tick & Doyle, Eric H. Karp, Ann Marie Monzione, Friedman Handler & Karp, Boston, Mass., for plaintiff.

John J. Ryan, Jr., Parker, Coulter, Daley & White, Boston, Mass., for Barletta.

John F. Kryzovic, City Sol., Everett, Mass., Matthew J. Buckley, Intern. Broth. of Police Officers, Boston, Mass., for City of Everett.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SKINNER, District Judge.

This case arises out of a meeting of the Everett School Committee on August 29, 1988. The plaintiff, Ronald J. Vacca, and the defendant, David Barletta, are two elected members of the committee. Mr. Barletta was the acting chairperson of the committee on August 29, 1988. After an argument about the hiring of seven teachers for the upcoming school year, Mr. Barletta asked the assistant superintendent to call the police to ask them to remove Mr.

402

Vacca from the meeting. Three police officers, defendants Basteri, Mazzi, and Andrulli, removed Mr. Vacca from the meeting, and held him in custody at the police station for about an hour.

The plaintiff has sued David Barletta, the three police officers, and the City of Everett for violations of his civil rights and for the intentional infliction of emotional distress. The City of Everett and David Barletta have moved for summary judgment on all of the counts pending against them.

*City of Everett's Motion for Summary Judgment*

In Count XX of his complaint, the plaintiff alleges that the City of Everett is liable for negligent infliction of emotional distress through the actions of Mr. Barletta and the three police officers. Count XX realleges four previously stated counts: negligent infliction of emotional distress by Barletta, Basteri, Mazzi, and Andrulli.

■ The plaintiff does not allege that the City adopted any policy, ordinance, regulation, or custom that resulted in a constitutional deprivation. The plaintiff, therefore, has not stated a claim against the City under § 1983. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Since the only count involving the City is a state claim, the City is a pendent party.

■ In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court refused to allow the plaintiff to add the county as a pendent party. The plaintiff had filed suit against the County Treasurer and county commissioners under § 1983. At the time *Aldinger* was decided, counties could not be named as defendants in § 1983 actions. The plaintiff sought, therefore, to assert claims against the county under state statutes providing for vicarious liability arising out of the torts of county officials. The Court held:

As we have indicated, we think a fair reading of the language used in § 1343, together with the scope of § 1983, re-quires a holding that the joinder of a municipal corporation, like the county here, for purposes of asserting a state-law claim not within federal diversity jurisdiction, is without the statutory jurisdiction of the district court.

427 U.S. at 17, 96 S.Ct. at 2421–22.

Two years after *Aldinger* was decided, the Court held that municipalities could be considered "persons" within the meaning of § 1983 if the action that is alleged to be unconstitutional implements a governmental policy or custom. *See Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. The basic holding of *Aldinger,* however, is still good law. *See Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 372 n. 12, 98 S.Ct. 2396, 2402 n. 12, 57 L.Ed.2d 274 (1978); *Neptune v. McCarthy,* 706 F.Supp. 958, 960 (D.Mass.1989). Following the logical conclusion of *Aldinger,* combined with *Monell,* some courts have held that in a suit against city employees, the city cannot be joined as a pendent party unless there is an allegation of a municipal policy or custom that would make the city liable directly under § 1983. *See Locust v. Degiovanni,* 485 F.Supp. 551 (E.D.Pa.1980); *Christensen v. Phelan,* 607 F.Supp. 470 (D.Colo. 1985). *See also* 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3567.2. Under *Aldinger,* therefore, I cannot exercise pendent jurisdiction over Count XX.

*David Barletta's Motion for Summary Judgment*

Mr. Barletta has moved for summary judgment on Counts I, II, and III of the complaint. Count I alleges a violation of 42 U.S.C. § 1983; Count II alleges a violation of the Massachusetts Civil Rights Act; and Count III alleges intentional infliction of emotional distress.

*Count I*

■ Count I alleges that on August 29, 1988, Mr. Barletta, acting under color of law, violated the plaintiff's right of free speech, right to represent his constituents, and right to be free from unreasonable seizures of his person.

Absolute Immunity

The defendant claims that as a presiding officer of a school committee, he is entitled to absolute immunity. He asserts that the primary function of the Everett school committee is legislative.

The United States Supreme Court has held that federal, state, and regional legislators are entitled to absolute immunity from federal damages suits for actions taken in their legislative capacities. *See Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). The Court has not decided whether individuals performing legislative functions at the local level should be granted absolute immunity. *Lake Country Estates*, 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26. Several courts of appeal have extended absolute immunity to local and municipal legislators. *See, e.g., Hernandez v. City of Lafayette*, 643 F.2d 1188, 1192–93 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Reed v. Village of Shorewood*, 704 F.2d 943, 952–53 (7th Cir. 1983); *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349–50 (9th Cir. 1982). Our court of appeals has not resolved the issue of absolute immunity for local officials. *See Cutting v. Muzzey*, 724 F.2d 259, 261–62 (1st Cir.1984). *But see Latino Political Action Committee, Inc. v. City of Boston*, 581 F.Supp. 478, 482 (D.Mass.1984) (holding that, to the extent that they are acting in their legislative capacities, Boston's Mayor and City Council members are absolutely immune from suits for damages, injunctive relief, or declaratory relief under § 1983).

It is not necessary for me to address the question of whether to extend absolute immunity in this case. School committees in Massachusetts have been given general powers over public schools. *See Braintree Baptist Temple v. Holbrook Public Schools*, 616 F.Supp. 81, 89 (D.Mass.1984). By statute, school committees "shall make all reasonable rules and regulations, consistent with law, for the management of the public schools of the city and for conducting the business of the committee." 43 M.G.L. § 33. 71 M.G.L. § 37 gives the school committees "general charge of all the public schools...." including some legislative powers.

The relevant inquiry, however, is whether during the meeting of August 29, 1988 the school committee members were acting in a legislative capacity. "[W]e look to the function the individual performs rather than his location within a particular branch of government." *Aitchison v. Raffiani*, 708 F.2d 96, 99 (3rd Cir.1983). Our court of appeals has adopted a two-pronged test for distinguishing between legislative and administrative activity:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts", such as "generalizations concerning a policy or state of affairs", then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action". If the action involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others", it is administrative.

*Cutting v. Muzzey*, 724 F.2d at 261 (quoting *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427, 1510–11 (1978)).

To determine whether the Everett school committee was acting in a legislative or administrative capacity on the evening of August 29, 1988, I look to the Minutes of the Everett School Committee Meeting, August 29, 1988 (Plaintiff's Exhibit A) and the Transcript of the Relevant Portions of the Videotape of the Everett Community Television of the Everett School Committee of August 29, 1988 (Plaintiff's Exhibit C). The minutes list the many items that were discussed in the meeting. The items are largely administrative issues affecting indi-

viduals, rather than general policy matters. The items listed include: the appointment of the English Department Head; the salary for substitute custodians; the matter of part-time clerical help at the Centre School; the appointment of an individual as a teacher in the Everett Public Schools; the amending of the Rules and Regulations to allow a public forum at each School Committee meeting; the acceptance of two teachers' resignations; a request by a teacher for maternity leave; a request by a school principal for permission to have students visit Washington, D.C.; and a request from the Everett Playgroup for permission to use an available classroom.

Although a few of these items appear to be legislative, such as amending the Rules and Regulations, the topics discussed at the meeting were primarily administrative. Moreover, the issue being discussed during the dispute between Mr. Barletta and other committee members was the hiring of seven specific individuals as teachers. (Transcript of Videotape; Barletta Dep. at 107) Since Mr. Barletta was exercising a primarily administrative function during the meeting, he is not entitled to absolute immunity under § 1983.

### Qualified Immunity

■ Government officials who are not granted absolute immunity are entitled to qualified immunity from suit. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether a defendant will be granted qualified immunity is a question of law, appropriate for resolution at the summary judgment stage:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."

*Harlow v. Fitzgerald*, 457 U.S. at 818–19, 102 S.Ct. at 2738.

■ Since the defendant has moved for summary judgment, I must view the record in the light most favorable to the plaintiff and indulge all inferences in his favor. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). According to Mr. Vacca, during the meeting of August 29, 1988, he was questioning Superintendent Gibson about funds available for the hiring of teachers for the upcoming school year. (Transcript of Videotape, Barletta Dep. at 107) Mr. Vacca had been given the floor to speak by Mr. Barletta. (Barletta Dep. at 109) The only words used by Vacca that Barletta found offensive were "boondoggle" and "snowing," referring to the actions of Superintendent Foresteire. (Barletta Dep. at 130) Apart from his manner of speaking, the only behavior Barletta objected to was Vacca's shaking his index finger while he was talking. (Barletta Dep. at 128)

I find that, making all inferences in the plaintiff's favor, Barletta violated Vacca's clearly established constitutional rights of free speech, to represent his constituents, and to be free from unreasonable seizures. The Supreme Court has stated:

The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. The central commitment of the First Amendment, as summarized in the opinion of the Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 [84 S.Ct. 710, 720, 11 L.Ed.2d 686] (1964), is that "debate on public issues should be uninhibited, robust, and wide-open." ... Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.... Legislators have an obligation to take positions on controversial political questions so that their constituents can

be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them.

*Bond v. Floyd,* 385 U.S. 116, 135–37, 87 S.Ct. 339, 349–50, 17 L.Ed.2d 235 (1966).

*Bond* involved the refusal of the Georgia House of Representatives to seat Julian Bond because of his statements about the government's Vietnam policy. Although *Bond* involved a state legislature, its reasoning applies equally to a local school committee. The Court in *Bond* stated in dicta that if the statements in question had been made by a private citizen, they would have been protected by the first amendment. 385 U.S. at 135, 87 S.Ct. at 349. A reasonable person acting as chairperson of a public meeting would know that a member of an elected body has a constitutional right to speak on public issues. Under *Bond,* this right is part of the duty to represent one's constituents. "A finding that the law was clearly established renders an inquiry into good faith irrelevant." *Miller v. Town of Hull, Mass.,* 878 F.2d 523, 534 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) (denying qualified immunity to members of town board of selectmen who violated the first amendment rights of members of town redevelopment authority by discharging them because of their approval of a subsidized housing project for the elderly). Taking all inferences in favor of the plaintiff, Mr. Barletta violated Mr. Vacca's clearly established constitutional rights. Whether Mr. Barletta actually violated Mr. Vacca's constitutional rights, or whether he merely exercised his right to implement a valid time, place, and manner restriction, will be decided at trial.

*Count II*

■ Count II alleges that Mr. Barletta's actions on August 29, 1988 violated the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11*l*. The Massachusetts Civil Rights Act provides a remedy for any person whose exercise of federal or state rights has been interfered with "by threats, intimidation, or coercion." M.G.L. c. 12, § 11*H*.

Mr. Barletta instructed the assistant superintendent to call the police. When the police arrived, Mr. Barletta asked them to remove Mr. Vacca from the meeting. (Barletta Dep. at 152–53, 156) There is a material issue of disputed fact as to whether Mr. Barletta's actions constituted a deprivation of Mr. Vacca's first amendment rights by threats, intimidation, or coercion. *See Miller v. Town of Hull, Mass.,* 878 F.2d at 533 (members of town board of selectmen violated the Massachusetts Civil Rights Act when they discharged members of the town redevelopment authority for speaking out and voting for a project to which the board was opposed).

*Count III*

■ Count III alleges that Mr. Barletta's actions constituted intentional infliction of emotional distress. The Supreme Judicial Court of Massachusetts has set out the standard for intentional infliction of emotional distress:

> We have placed reckless and intentional infliction of emotional distress in the same category. We have not made physical harm an essential element of such a claim. If a defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely consequence of his conduct, if his conduct was extreme and outrageous ..., and if his conduct caused the plaintiff severe emotional distress, we would impose liability.

*Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824, 827 (1988) (citations omitted).

Mr. Vacca did not suffer any physical injury as a result of being removed from the meeting, and sought no medical or psychiatric treatment after the incident. (Plaintiff's Answers No. 5 and 17 to David Barletta's First Set of Interrogatories) Mr. Vacca claims, however, that he did suffer:

> the embarrassment and humiliation of being physically removed from a meeting in front of the public sector of Everett, including my constituents and all of the City's residents who were viewing this incident on the Everett Cable television channel. In addition, this incident was

viewed by a greater audience when it was aired on Channel 7 later that evening. I also suffered the embarrassment and humiliation of being hand-cuffed in public and placed in a police wagon and the further embarrassment and humiliation of being placed in a cell at the police station with other prisoners as though I were a common criminal.

(Plaintiff's Answer No. 4 to David Barletta's First Set of Interrogatories) Whether Mr. Barletta knew that having the police remove Mr. Vacca from a public meeting would cause him severe emotional distress is a question of fact which I cannot determine on this motion. There are also genuine issues of material fact as to whether Mr. Barletta's actions were extreme and outrageous and as to whether Mr. Vacca's emotional distress was severe.

Accordingly, the motion for summary judgment by the defendant City of Everett on Count XX is allowed. The motion for summary judgment by the defendant David Barletta on Counts I, II, and III is denied.