Ronald J. VACCA, Plaintiff, Appellee,

v.

David BARLETTA,
Defendant, Appellant.

No. 91–1001.

United States Court of Appeals,
First Circuit.

Heard April 2, 1991.

Decided May 9, 1991.

Richard L. Neumeier, with whom John J. Ryan, B. Deidre Brennan and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for defendant, appellant.

Ann Marie Monzione, with whom Eric H. Karp and Friedman, Handler & Karp, Boston, Mass., were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, and TORRUELLA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

During the August 29, 1988, meeting of the Everett (Massachusetts) School Committee, Committee Member Ronald Vacca aggressively challenged Superintendent Frederick Gibson regarding the allocation of $151,000 for the purpose of filling seven vacant teaching positions. Vice–Chairperson David Barletta was acting Chairperson in the regular Chairperson's absence. Barletta took exception to the tone used by Vacca in addressing Gibson. He attempted to restore order to the meeting by banging his gavel several times and by issuing the following warnings: "I'm not going to continue on with this screaming debate." "You want to discuss it, discuss it. You want to start yelling, I won't put up with it." Barletta's warnings went unheeded. Barletta responded by informing Vacca that if he did not stop he was "going to have an early night," to which Vacca replied "I know ... go ahead." At that point Barletta called a five minute recess and requested that Assistant Superintendent Frederick Foresteire have Vacca removed. After five minutes, the recess ended, Barletta, Vacca and Gibson returned, and discussion resumed. Very shortly thereafter, however, three Everett police officers arrived and, amidst protests, physically dragged the still seated Vacca from the room. Vacca was then handcuffed and removed to the local police station where he was detained for a period of approximately 45 minutes. The meeting was adjourned for lack of a quorum.[1]

As a consequence of Vacca's treatment at the School Committee meeting, Vacca sued Barletta[2] under the following theories of liability: (1) violation of his first amendment rights under 42 U.S.C. § 1983; (2) violation of the corresponding Massa-

---

1. Vacca was not the only member no longer present. Two additional members did not return after the recess.

2. Vacca also sued the City of Everett and the three police officers, Robert Basteri, Paul Mazzi and Anthony Andrulli, who removed him from the meeting. We are only concerned with Barletta in this appeal.

chusetts Civil Rights Law, Mass.Gen.Laws ch. 12, § 11I (1990); and (3) intentional infliction of emotional distress. Barletta claimed absolute, or in the alternative qualified, immunity and moved for summary judgment. The district court refused to grant absolute immunity. With regard to Barletta's assertion of qualified immunity, the district court determined that material issues of fact remained in dispute and therefore summary judgment was inappropriate. 753 F.Supp. 400. Barletta appealed. We affirm.

## ABSOLUTE IMMUNITY

■ This court has not decided whether local officials are entitled to claim absolute immunity as an affirmative defense. *See Cutting v. Muzzey,* 724 F.2d 259, 261–62 (1st Cir.1984). We need not reach that issue in this appeal. It is well established that for absolute immunity to attach, the individual must have been acting in a legislative rather than administrative capacity. *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506, 519 n. 11 (1st Cir.1987); *Agromayor v. Colberg,* 738 F.2d 55, 58 (1st Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984); *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983). The test for distinguishing between legislative and administrative activity is two-fold:

The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action." If the action involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.

*Cutting,* 724 F.2d at 261 (quoting *Developments in the Law—Zoning,* 91 Harv.L. Rev. 1427, 1510–11 (1978)). The discussion at the time of Vacca's outburst involved the hiring of seven specific individuals. Although the particular exchange at issue involved budgetary concerns (which Barletta argues are legislative matters), it was clear in context that the parties were simply discussing whether, or how, the money could be found to cover the cost of hiring those particular individuals. The district court therefore correctly determined that Barletta was exercising a primarily administrative function and consequently is not entitled to absolute immunity. Thus, since Barletta's action was one which would not in any event qualify as a legislative act, we need not decide in this case whether he is entitled to the absolute immunity granted in the exercise of legislative functions.

## QUALIFIED IMMUNITY

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question becomes, therefore, whether Vacca had a constitutional or statutory right to speak at the School Committee meeting, and, if so, whether a reasonable person in Barletta's circumstances would have been aware that his actions violated that right.

It is undisputed that "free discussion of governmental affairs" lies at the heart of the first amendment. *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776–77, 98 S.Ct. 1407, 1415–16, 55 L.Ed.2d 707 (citing *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966)). Freedom of speech, however, is not absolute at all times and under all circumstances. *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420 (1988). Even protected speech may be restricted to a reasonable time, place and manner. *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). Such restrictions "are valid provided that

they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.*

Barletta's claim to qualified immunity rests upon the Massachusetts Open Meeting Law and the Rules of the Everett School Committee, both of which contain valid "manner" restrictions designed to maintain order during committee meetings. The Massachusetts Open Meeting Law provides:

> No person shall address a public meeting of a governmental body without permission of the presiding officer at such meeting, and all persons shall, at the request of such presiding officer, be silent. If, after warning from the presiding officer, a person persists in disorderly behavior, said officer may order him to withdraw from the meeting, and, if he does not withdraw, may order a constable or any other person to remove him and confine him in some convenient place until the meeting is adjourned.

Mass.Gen.Laws ch. 39, § 23C (1988). Similarly, the Rules of the Everett School Committee describe the duties of the chairperson as follows:

> The Chairperson shall call the meeting to order; preside over the proceedings to ensure conformance with the Rules of the Committee and Parliamentary Procedure; promptly make all rulings required in accordance with the office of Chairperson; and provide for the safety of all persons in attendance at duly called meetings. In this latter respect, the Chairperson shall have the authority to order the ejection of any and all persons acting in a disorderly or disruptive manner, and require that the person or persons be conveniently held at a place apart from the meeting until the meeting has been adjourned.

Rules of the Everett School Committee, ch. IV, § 1 [hereinafter "Rules"].

Vacca, however, maintains that neither provision applies to the series of events which took place at the August 29 meeting.

First, he notes that the Open Meeting Law clearly states that it is a regulation of participation by the *public*, not elected officials, at open meetings. Mass.Gen.Laws ch. 39, § 23C (1988). Thus he contends that it was unreasonable for Barletta to believe that the Open Meeting Law applies to duly elected officials.

Second, Vacca notes that the duty of the Chairperson under the Rules of the Everett School Committee to eject disorderly and disruptive persons is tied to the duty of the Chairperson to provide for the safety of all persons in attendance. Rules, ch. IV, § 1. Vacca therefore maintains that it was only appropriate for Barletta to eject individuals who were threatening the safety of others. Since there has been no allegation that Vacca's behavior was posing a threat to anyone's safety, Vacca contends that Barletta's reliance on the School Committee Rules was likewise unreasonable.

We do not find it necessary to resolve this dispute. The issue of qualified immunity turns solely on whether the restrictions placed upon Vacca by Barletta were reasonable under the particular circumstances. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988) ("Although the qualified immunity determination is a legal question, it is not to be answered in the abstract but in reference to the particular facts of the case."). Whether or not Barletta acted in accord with the Open Meeting Law and/or the Rules, which is itself disputed, is at most evidence as to whether Barletta acted reasonably. Moreover, Vacca raises several other questions of fact which bear on the reasonableness of Barletta's actions. *Petitti v. New England Tel. and Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990) (summary judgment is inappropriate "if there are any factual issues that need to be resolved before the legal issues can be addressed").

Vacca disputes whether Barletta followed the recognized parliamentary procedure historically employed by the School Committee Chairperson for calling disorderly and disruptive persons to order and hence whether Barletta's actions were reasonable. In addition, he questions Barletta's motives for ordering his removal. *See*

*Rakovich,* 850 F.2d at 1211 (intent may be considered in determining whether the conduct set out a constitutional violation). His allegations regarding motive are two-fold. First, he alleges that Barletta may have acted out of some personal animosity toward him. He maintains that prior School Committee meetings also involved "heated" disputes but did not result in the ejection of any participating members. More to the point, he questions why Gibson, who was an equally vocal participant in the debate, was not similarly removed. Second, he questions whether Barletta's motive was actually to suppress the particular content of his speech, rather than to impose a content-neutral, and hence constitutional, manner restriction. He notes that during the verbal altercation between Gibson and himself, Barletta stated that he would not countenance such "accusations" and took exception to Vacca's use of the words "boondoggling" and "snowing."

Upon review of the evidence,[3] including a video tape that the parties stipulated that we consider, which we view in the light most favorable to Vacca, *see id.* at 1205 (the regular summary judgment standard applies in qualified immunity cases); *see also Villanueva v. Wellesley College,* 930 F.2d 124, 127 (1st Cir.1991) (upon review of summary judgment "we view all the facts in the light most favorable to the non-moving party and indulge all inferences advantageous to that party"), we find that Vacca's allegations raise genuine issues of fact. Because material issues of fact are in dispute, the district court correctly denied summary judgment.

## CONCLUSION

For the reasons stated above, the district court order is hereby *affirmed.*