# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT NORSE,
                 *Plaintiff-Appellant,*

                 v.

CITY OF SANTA CRUZ; CHRISTOPHER
KROHN, individually and in his
official capacity as Mayor of the
City of Santa Cruz; TIM
FITZMAURICE; KEITH A. SUGAR;
EMILY REILLY; ED PORTER; SCOTT
KENNEDY; MARK PRIMACK,
individually and in their official
capacities as Members of the
Santa Cruz City Council; LORAN
BAKER, individually and in his
official capacity as Sergeant of the
Santa Cruz Police Department;
STEVEN CLARK,
                 *Defendants-Appellees.*

No. 07-15814

D.C. No.
CV-02-01479-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
June 12, 2009—San Francisco, California

Filed November 3, 2009

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Schroeder;
Partial Concurrence and Partial Dissent by Judge Tashima

14795

## COUNSEL

David Beauvais, Oakland, California, for the plaintiff-appellant.

Kathleen Wells, Santa Cruz, California, for the plaintiff-appellant.

George J. Kovacevich, Santa Cruz, California, for the defendants-appellees.

---

**OPINION**

SCHROEDER, Circuit Judge:

Plaintiff-Appellant Robert Norse was ejected from two meetings of the Santa Cruz City Council, one in 2002 and one in 2004. He filed this 42 U.S.C. § 1983 action against the City and its Mayor and Council members alleging violation of his First Amendment rights. In a 2004 unpublished, non-precedential disposition, we unanimously upheld the validity of the Council rules that were being enforced at the time of the ejections. *Norse v. City of Santa Cruz*, No. 02-16446, 2004 WL 2757528 (9th Cir. Dec. 3, 2004) ("*Norse I*"), at *1. The rules authorize removal of "any person who interrupts and refuses to keep quiet . . . or otherwise disrupts the proceedings of the Council." We observed that the rules are materially similar to the regulations we upheld in *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990). *Id.*

A majority of us, however, reversed and remanded the district court's dismissal on the pleadings, holding that there was no way of assessing the reasonableness of the Mayor's actions, particularly his action in ordering Norse's 2002 ejection after Norse gave a Nazi salute to protest the Mayor's administration of the Council's rules. *Id.* at *2.

On remand, the district court ruled that the Mayor acted reasonably in ordering both of Norse's ejections, because Norse was supporting the conduct of persons in the meeting who were causing a disruption. Our consideration of the case

has been delayed because of the difficulty in obtaining the factual record underlying the district court's rulings. This record consists principally of the video tapes of the two episodes in question, so the underlying facts are not disputed. There is no doubt that ordering Norse's ejection in 2004 was a reasonable application of the rules of the Council. The videotape shows that Norse was engaged in a parade about the Council chambers protesting the Council's action, and his conduct was clearly disruptive.

With respect to the March 12, 2002 meeting, the behavior that prompted Norse's ejection was his giving a Nazi salute in support of a disruptive member of the audience who had refused to leave the podium after the presiding officer ruled that the speaker's time had expired, and that the portion of the Council meeting devoted to receiving oral communications from the public had ended. Two members of the audience in the rear were creating a disruption. When the Mayor told the speaker at the podium that her time had expired, the speaker was visibly unhappy with the ruling, and Norse directed a Nazi salute in the presiding officer's direction. The salute was obviously intended as a criticism or condemnation of the ruling.

The Mayor had resumed Council business by reading announcements and did not notice Norse's Nazi salute until another Council member called the Mayor's attention to it. The district court accurately described the proceedings, as portrayed on the video, as follows:

> Since he was reading, [the Mayor] did not notice Norse's gesture but within seconds council member Fitzmaurice called his attention to the fact that Norse had made a Nazi salute. . . . [The Mayor], . . . as the presiding officer in charge of running the meeting, was suddenly faced with a meeting that had been interrupted by an offended council member. [The Mayor] had just finished dealing with two disruptive

members of the public, at least one of whom Norse
was supporting with his salute. [The Mayor] also
knew that two Council members in the previous
months had expressed to Norse their abhorrence of
his Nazi gestures which reasonably suggests that
Norse intended his salute at the March 12, 2002
meeting to be disruptive. Further, Norse had begun
to verbally challenge Fitzmaurice's comments.

Under those circumstances, the district court found that the
Mayor's action in evicting Norse from the chambers was rea-
sonable, and that the Mayor and council members were all
entitled to qualified immunity.

[1] Our well-settled law gives great discretion to presiding
officers in enforcing reasonable rules for the orderly conduct
of meetings. *In Kindt v. Santa Monica Rent Control Board*, 67
F.3d 266, 269 (9th Cir. 1995), we upheld the Santa Monica
Rent Control Board's action in ejecting a speaker several
times because his conduct disrupted the orderly processes of
meetings. We have long recognized that First Amendment
rights of expression are more limited during a meeting than in
a public forum, as, for example, a street corner. *See White*,
900 F.2d at 1425. Thus, we reaffirmed in *Kindt* what we said
in *White*, that a council "does not violate the first amendment
when it restricts public speakers to the subject at hand," and
that a chair of a meeting may stop a speaker "if his speech
becomes irrelevant or repetitious." *Kindt*, 67 F.3d at 270
(quoting *White*, 900 F.2d at 1425).

[2] Government officials performing discretionary func-
tions are entitled to qualified immunity where they reasonably
believe their actions to be lawful. *Saucier v. Katz*, 533 U.S.
194, 202 (2001). The interpretation and the enforcement of
rules during public meetings are highly discretionary func-
tions. *See White*, 900 F.2d at 1426 ("[T]he point at which
speech becomes unduly repetitious or largely irrelevant is not

mathematically determinable. The role of a moderator involves a great deal of discretion.").

**[3]** Our law is also clear, however, that discretion is not unlimited, and that rules may not be enforced in order to suppress a particular viewpoint. *See White*, 900 F.2d at 1426. A majority of us remanded this case years ago because, on the basis of the pleadings alone, Norse's ejection after the salute may have been on account of a viewpoint that was contrary to that of the Council. Now, on the basis of the undisputed factual record of the videotaped proceedings, it is clear that the salute was in protest of the chair's enforcing the time limitations and in support of the disruption that had just occurred in the back of the meeting room. We agree with the district court that the ejection was not on account of any permissible expression of a point of view. Norse was protesting the good faith efforts of the Chair to enforce the Council's rules, which we have already determined were valid, in order to maintain order. *See Norse I*, 2004 WL 2757528, at *1.

**[4]** Accordingly, we agree with the district court that the defendants did not violate Norse's constitutional rights. In addition, even if, in retrospect, we were to hold that Norse's First Amendment rights were violated, it would not have been clear to a reasonable person in the Mayor and Council's position that the ejection was unlawful, given the difficult circumstances and threat of disorder that was presented by the disruptions.

**[5]** We also agree with the district court that Norse's refusal to comply with the ejection order established probable cause for his arrest. Even if the ejection itself violated Norse's rights, there would have been no basis for a reasonable police officer to believe that Norse was defying anything other than a lawful order. The Rules of the Body provided that the Sergeant at Arms "shall carry out all orders and instructions of the Presiding Officer." Our decision in *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994), relied upon by the

district court, fully supports granting qualified immunity to arresting officers who have probable cause to believe that valid rules have been violated.

**[6]** In sum, the salute had little to do with the message content of the speaker whose time had expired. Rather, it was a condemnation of the efforts of the Mayor to enforce the rules of the meeting. The Council member who called the salute to the Mayor's attention could reasonably have interpreted it as intended to support and to further the disruption that had just been occurring in the room. Officers presiding over public meetings are not required to condone conduct fostering disruption of a meeting. The district court correctly ruled that the individual defendants were entitled to immunity when they reasonably acted on the belief that disruptive behavior was occurring and was fostered by the Nazi salute.

**[7]** Because the individual defendants were reacting reasonably to the specific situations that confronted them in both 2002 and 2004, and because the rules of the body they enforced were constitutionally valid, there is no basis for municipal liability. *See White*, 900 F.2d at 1424-25; *Kindt*, 67 F.3d at 271-72.

AFFIRMED.

---

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

In a proceeding akin to summary judgment, on the date set for the commencement of a jury trial, the district court held as a matter of law that defendants were entitled to qualified immunity from liability. It held, first, that plaintiff's First Amendment rights had not been violated, and, second, even if they were, those rights were not clearly established. Two incidents are at issue in this case, one in 2002 and the other

in 2004, both involving plaintiff Norse's ejection from meetings of the Santa Cruz City Council. I agree that Norse's conduct at the 2004 meeting, as a matter of uncontroverted fact, was disruptive. I therefore concur in the portion of the majority opinion affirming the district court's dismissal of that claim.[1] I disagree, however, with the majority's holding "that the defendants did not violate Norse's constitutional rights" in ejecting him from the 2002 Council meeting. Maj. op. at 14801 (agreeing with the district court so holding).

While it is clear under our case law that local public officials conducting public meetings can restrict speech at such meetings according to subject matter, duration, and method, *see Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 272 (9th Cir. 1995); *White v. City of Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990), it is equally clear that public officials may not restrict speech according to the viewpoint of the speaker, *see id.* at 1425. In order to avoid any constitutional problems, in a prior appeal, we construed the rules of the Santa Cruz City Council "to proscribe only disruptive conduct." *See Norse v. City of Santa Cruz*, 118 F. App'x 177, 178 (9th Cir. 2004) ("*Norse I*").[2] That limitation on what conduct the Council rules proscribe is the law of the case. Yet, the record supports the inference that the Mayor and members of the City Council excluded Norse from the 2002 meeting because they disagreed with the views he expressed by giving his silent Nazi salute.[3]

---

[1] I also agree with the majority that, whether or not there was probable cause for Norse's arrest at the 2002 meeting, the police officer (who was acting as Sergeant at Arms for the Council meeting), acted reasonably in carrying out the direct orders of the Presiding Officer (*i.e.*, the Mayor) in ejecting Norse from the meeting.

[2] This narrowing construction was necessary because the Council rules authorized, *inter alia*, the "removal . . . of any person who uses 'language tending to bring the council or any council member into contempt . . . .' " *Norse I*, 118 F. App'x at 178 (quoting the Council rules).

[3] The district court's qualified immunity ruling was based primarily on viewing a video, which we have also viewed. No witnesses were called or

It is uncontroverted that Norse's Nazi salute lasted only a second or two and, in the course of rendering that salute, Norse uttered no word or other sound — he was silent. It is also undisputed that the Council permits silent, visual speech, such as the displaying of signs at its meetings, so long as such speech does not block the view of or otherwise interfere with other meeting attendees. Thus, the salute comported with the Council's rule permitting silent, non-verbal messages at the Council meeting. That it was not, itself, disruptive, is evidenced by the fact that the Mayor was not even aware of it — he continued with his reading of announcements — until Councilmember Fitzmaurice called his attention to it. And, as the video demonstrates, no member of the audience reacted to Norse's silent salute. Drawing all reasonable inferences in Norse's favor, as we must, I submit that there is no way to conclude that, as a matter of law, Norse's conduct in rendering a fleeting, silent Nazi salute was disruptive.

In fact, a close reading of the majority opinion shows that it does not hold that Norse's conduct was, itself, disruptive. Thus, there was no justification for the Mayor to eject Norse from the meeting for being disruptive. On the contrary, the record clearly supports the inference that Norse was ejected from the 2002 meeting because the Mayor and Council disagreed with (and intensely and overtly disliked) his viewpoint. The portion of the district court's ruling quoted by the majority admits as much. First, the district court noted that the Mayor was "suddenly faced with a meeting that had been interrupted by an *offended* council member."[4] Maj. op. at 14799 (emphasis added). It then notes the Council's hostility

---

subject to cross-examination. The district court purported to make no findings of fact, something it was not authorized to do because a jury trial had been demanded and was about to commence. Thus, the evidence on which the district court's and the majority's ruling were based is uncontroverted (and untested). What remains controverted, however, are the reasonable inferences that a fact finder can draw from this evidence.

[4]Note that the "interruption," or disruption, is caused, not by Norse, but by the council member.

to Norse's viewpoint. "[The Mayor] also knew that two Council members in the previous months had expressed to Norse their abhorrence of his Nazi gestures . . . ." *Id.* Further, as the district court also noted, when Norse made his Nazi salute gesture at past Council meetings, he was warned that Council members found the gesture to be offensive and that he would be removed from the meeting if he engaged in such conduct again. Thus, there is ample evidence in the record to support a finding that Norse was removed because of his viewpoint — because Council members detested being characterized as acting Nazi-like.

The majority attempts to elide the point by sidetracking the issue. It says that Norse's action was "in support of the disruption that had just occurred . . . ." Maj. op. at 14801. That the Mayor was acting "in good faith" to "enforce the Council rules . . . ." *Id.* That Norse's Nazi salute "could reasonably have [been] interpreted [ ] as intended to support and to further the disruption that had just been occurring the room." *Id.* at 14802 But Norse's speech cannot be suppressed because of the actions of others. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969) (holding that black armbands worn by high school students in protest of the Vietnam war were not disruptive, and that they could not be suppressed on account of the fact that the armbands might cause others to react in disruptive ways). Nor is Norse's intent relevant, so long as his speech comports with the Council's rules, as it did. In sum, the district court erred in holding as a matter of law that the Mayor and Council's action in ejecting Norse from the 2002 meeting for rendering a silent Nazi salute did not violate his First Amendment rights. It could do so only by drawing all inferences against Norse, as the majority does.

Alternatively, the majority further holds that "even if, in retrospect, we were to hold that Norse's First Amendment rights were violated, it would not have been clear to a reasonable person in the Mayor and Council's position that the ejection was unlawful . . . ." Maj. op. at 14801. This holding also

is just plain wrong. Our case law had clearly established by 1990, twelve years before the 2002 Council meeting, that speech at a municipal meeting could not be suppressed unless it was actually disruptive. *See White*, 900 F. 2d at 1424. That this was the law of the circuit was confirmed five years later, in 1995, in *Kindt*, 67 F.3d at 270. Just as importantly, our First Amendment jurisprudence on the limited public fora of municipal meetings is in accord with decades-old, clearly-established Supreme Court case law that speech in such fora cannot be "prohibited ' "merely because public officials disapprove the speaker's view." ' " *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 132 (1981) (quoting *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536 (1980) (quoting *Niemotko v. Maryland*, 340 U.S. 268, 282 (1951) (Frankfurter, J., concurring in result))); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (noting that the State may regulate speech at a limited public forum "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because officials oppose the speaker's view"). Thus, this First Amendment principle that the Mayor and City Council violated (and the majority ignores) has been the law of the land for over a half century.

As I noted earlier, the district court's procedure in granting judgment to defendants on qualified immunity was akin to a summary judgment proceeding.[5] That being the case, we are required to draw every reasonable inference in favor of the opposing party, here Norse. But the majority does exactly the opposite. First, the majority "agree[s] with the district court that the ejection was not on account of any permissible expression of a point of view." Maj. op. at 14801. But this

---

[5]The district court never specified what procedure it was following, only that it was holding a "hearing" to resolve the issue of qualified immunity. Neither does the majority acknowledge the district court's unusual procedure, nor indicate what legal standard applied to that procedure, nor what standard of review it is applying.

view rejects the reasonable inference that the Mayor was acting to enforce the Council's stated "abhorrence of [Norse's] Nazi gesture." The majority also agrees with the district court's view "that Norse intended his salute . . . to be disruptive." *Id.* at 14800. This, too, is an inference drawn against Norse. And again, the majority infers that "[t]he Council member who called the salute to the Mayor's attention could reasonably have interpreted it as intended to support and to further the disruption that had just been occurring [by others] in the room." *Id*. at 14802. But why, at this stage, should such an inference be drawn against Norse? All these are issues of controverted fact which should have been submitted to the jury — the trier of fact.

From all this, the majority concludes that "it would not have been clear to a reasonable person in the Mayor and Council's position that the ejection was unlawful, given the difficult circumstances and threat of disorder that was presented by the disruptions." *Id.* at 14801. I have viewed the same video of the 2002 Council meeting on which the majority bases its conclusion, and to conclude that the circumstances were "difficult" and that there was a "threat of disorder," as the majority does, is hyperbolic, to say the least. Most reasonable persons would conclude, after viewing the same video, that this meeting was no more "difficult" or "disorderly" than any other small-town Council meeting. In any event, this too is a question of fact. But, even if the majority's "findings" are taken at face value, the threat of disruption by others does not excuse the denial of Norse's clearly established First Amendment rights. As the Supreme Court has reminded us, "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker*, 393 U.S. at 508.

If the reasonable inferences are drawn in favor of Norse, as should have done in this summary-judgment-like proceeding, Norse was deprived of his First Amendment right silently to protest the Council's action by his Nazi salute because the

Mayor and Council carried out their previously voiced threat — that Norse would be removed from the meeting if he engaged in rendering his Nazi salute again. What's more, this law has been clearly established for decades. There is nothing ambiguous or "iffy" about this aspect of First Amendment law. No reasonable local public official could believe that he could lawfully remove a member of the public from a public meeting because he found that person's silent speech to be abhorrent or personally offensive.

I respectfully dissent from that portion of the majority opinion which grants the Mayor and Council members qualified immunity from liability on Norse's First Amendment claim for being ejected from the 2002 Council meeting. Because the law was clearly established and the evidence supports the inference that the Mayor and Council members acted to suppress speech they found to be abhorrent and offensive, even though it was not disruptive, it was error to grant qualified immunity to defendants as a matter of law. I would reverse the grant of qualified immunity as to the 2002 meeting and remand this claim for trial.