**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT NORSE,
　　　　　　*Plaintiff-Appellant,*

　　　　　v.

CITY OF SANTA CRUZ; CHRISTOPHER
KROHN, individually and in his
official capacity as Mayor of the
City of Santa Cruz; TIM
FITZMAURICE; KEITH A. SUGAR; EMILY
REILLY; ED PORTER; SCOTT KENNEDY;
MARK PRIMACK, individually and in
their official capacities as Members
of the Santa Cruz City Council;
LORAN BAKER, individually and in
his official capacity as Sergeant of
the Santa Cruz Police Department;
STEVEN CLARK,
　　　　　　*Defendants-Appellees.*

No. 07-15814

D.C. No.
CV-02-01479-
RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted
June 22, 2010—Pasadena, California

Filed December 15, 2010

Before: Alex Kozinski, Chief Judge, Stephen Reinhardt,
Pamela Ann Rymer, Sidney R. Thomas,
M. Margaret McKeown, William A. Fletcher,
Raymond C. Fisher, Ronald M. Gould, Richard C. Tallman,
Richard R. Clifton and Carlos T. Bea, Circuit Judges.

20067

Opinion by Judge Thomas;
Concurrence by Chief Judge Kozinski

## COUNSEL

David J. Beauvais, Oakland, California; and Kate Wells, Law Office of Kate Wells, Santa Cruz, California, for plaintiff-appellant Robert Norse.

George J. Kavacevich, Atchison, Barisone & Condotti, Santa Cruz, California, for defendants-appellees City of Santa Cruz et al.

## OPINION

THOMAS, Circuit Judge:

When Robert Norse gave the Santa Cruz City Council a silent Nazi salute, he was ejected and arrested. He sued city officials for violating his rights under the First Amendment. On the eve of trial, the district court sua sponte granted judgment against him, holding that the city officials were entitled to qualified immunity. Because the district court failed to provide Norse adequate notice and opportunity to be heard, among other procedural errors, we reverse the judgment of the district court.

I

On March 12, 2002, Robert Norse was ejected from a Santa Cruz City Council ("City Council") meeting and arrested after an incident in which he gave the Council a silent Nazi salute. Two weeks later, he filed a complaint in the District Court of Northern California, challenging the constitutionality of the City Council's decorum policy on its face and as applied to his conduct at the 2002 meeting. He named as defendants the City of Santa Cruz; Christopher Krohn, the Mayor ("Mayor"); Tim Fitzmaurice and Scott Kennedy, members of the Santa Cruz City Council; Loran Baker, the sergeant-at-arms of the meeting (and also a member of the Santa Cruz police force); and several others (collectively "the City").

The district court granted the City's motion to dismiss. Norse appealed. A panel of this court affirmed dismissal of Norse's facial challenge, but reversed dismissal of the as-applied challenge. *Norse v. City of Santa Cruz* ("*Norse I*"), 118 Fed. App'x. 177 (9th Cir. 2004). Construing the City's rules to proscribe only disruptive conduct, the panel held the rules were facially valid under controlling circuit case law. *See id.* at 178 (citing *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990)). The panel was not able to determine from the

pleadings whether the Nazi salute was disruptive, however, and thus had "no way of assessing the reasonableness of the Mayor's conclusion that Norse should have been ejected." *Id.* It reversed and remanded the as-applied challenge.

On January 13, 2004, while his appeal was pending before this Circuit, Norse again was ejected from another Santa Cruz City Council meeting and arrested, this time for whispering to another meeting attendee. On remand, Norse amended his complaint to challenge this ejection, as well. In June 2005, the district court entered a case management order giving the parties just less than six months to conduct limited discovery, and requiring that all dispositive motions be heard no later than December 16, 2005.

Neither party filed any dispositive motions.[1] The district court scheduled a jury trial for March 26, 2007. The parties filed trial briefs, motions in limine, evidentiary objections, proposed voir dire questions and jury instructions, and otherwise prepared for trial. In one motion in limine, Norse objected to the City's efforts to introduce evidence of his participation in City Council meetings other than the 2002 and 2004 meetings discussed in the complaint. At a pretrial hearing on March 15, Norse also objected to the admissibility of meeting minutes that purported to describe his conduct at these meetings.

On Thursday, March 22, 2007, the district court issued an order regarding trial proceedings in which it stated that rather than hold trial on the 26th, it would "consider the question of whether any of the individual defendants . . . is entitled to qualified immunity." The order also indicated the court was likely to deny, in part, Norse's motion in limine to exclude

---

[1]At oral argument before the district court, the City indicated its decision not to file a motion for summary judgment was a tactical choice. The district court noted at the commencement of the hearing that "it would have been helpful if there had been a summary judgment motion."

evidence of his actions at other City Council meetings, but stated that it would consider the specific evidence that the City wished to have admitted and would make evidentiary rulings on the 26th as well.

That Monday, Norse and the City appeared for a hearing. Norse objected to what he saw as an unorthodox procedure, arguing that he had been preparing for trial and did not have time to produce what in effect needed to be an opposition to summary judgment. He argued that videotapes of the 2002 and 2004 meetings were not accurate portrayals of the meetings inasmuch as they were only excerpts. He continued to object to the admissibility of evidence regarding other City Council meetings. He argued that he had witnesses to call who could give context to the videos. He opposed qualified immunity on the merits. The district court did not permit Norse to submit further evidence or present testimony.

On March 28, the district court entered a summary judgment order. *See LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("The court's pretrial order granting qualified immunity amounted to a sua sponte summary judgment."). It determined that the individual defendants were entitled to qualified immunity and that there was no independent basis to hold Santa Cruz liable. Although the district court appeared to consider evidence of Norse's conduct at two 2001 City Council meetings, it did not rule on Norse's motion in limine, nor did it resolve all pending evidentiary questions.

Norse appealed. The original panel retained jurisdiction over the case, and it affirmed. *Norse v. City of Santa Cruz* ("*Norse II*"), 586 F.3d 697, 700 (9th Cir. 2009). This time, Judge Tashima, dissenting in part, argued that "the record supports the inference that the Mayor and members of the City Council excluded Norse from the 2002 meeting because they disagreed with the views he expressed by giving his silent Nazi salute." *Id.* at 701 (Tashima, J., dissenting).

A majority of nonrecused active judges voted to rehear this case en banc pursuant to Circuit Rule 35-3. After reviewing the case, we conclude that the procedure the district court used in summarily disposing of Norse's claims was deficient and unfair to Norse.

## II

District courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial.[2] However, the procedural rules governing Rule 56 apply regardless of whether the district court is acting in response to a party's motion, or sua sponte. *See Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989); *Ind. Port Comm'n*, 702 F.2d at 111. Here, the district court erred in granting summary judgment sua sponte without providing Norse adequate notice and opportunity to be heard and without ruling on Norse's evidentiary objections.

## A

**[1]** "*Sua sponte* grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (internal quotation marks omitted). "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Portsmouth Square, Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

---

[2]*Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). While the Federal Rules of Civil Procedure have not expressly granted district courts this power, it nonetheless derives from Federal Rule of Civil Procedure 56. *Ind. Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 111 (7th Cir. 1983). Effective December 1, 2010, Rule 56 will make the power explicit. *See* Fed. R. Civ. P. 56(f) (explaining that the district court may grant summary judgment "for a nonmovant," "on grounds not raised by a party," or "on its own").

**[2]** A district court that "does not comply with the advance notice and response provisions of Rule 56(c) has no power to enter summary judgment." *Ind. Port Comm'n*, 702 F.2d at 111. At the time the district court acted, Rule 56 required that summary judgment motions "be served at least 10 days before the day set for the hearing," even when the court was acting sua sponte. Fed. R. Civ. P. 56(c) (1987);[3] *see Routman*, 873 F.2d at 971.[4]

**[3]** In this case, the district-court-imposed deadline for filing dispositive motions had passed some fifteen months before trial. On the Thursday before the Monday trial, the district court notified the parties of its intent to hear summary judgment arguments on the day set for trial. Under the rules operative at the time, Norse was only afforded two-days' notice before the hearing. *See* Fed. R. Civ. P. 6(a)(2) (1985 amendments) (weekend days excluded from calculation). Two-days' notice did not comply with the requirements of Rule 56, and it did not afford Norse adequate time to prepare for the hearing, notwithstanding the proximity of the trial date. *See Stella*, 4 F.3d at 55 ("[T]rial preparation is neither the same as, nor an acceptable substitute for, the special sort

---

[3]The local rules for the Northern District of California in effect at that time were more stringent, requiring summary judgment motions to be served at least 35 days before the hearing date (although allowing district courts discretion to hear motions filed in accordance with the timeline in the Federal rules). *See* Local Rule 7-2(a) (March 2007), 56-1.

[4] *See also Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (holding that the 10 day notice requirement in then-Rule 56 governs sua sponte grants of summary judgment); *Stella v. Town of Tewksbury, Mass.*, 4 F.3d 53, 55 (1st Cir. 1993) (same); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 n.7 (5th Cir. 1993) (same); *Capuano v. United States*, 955 F.2d 1427, 1432 n.16 (11th Cir. 1992) (same); *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 945 F.2d 53, 55 (2d Cir. 1991) (same); *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989); *cf. Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (holding more generally that the conditions of Rule 56 must be satisfied).

of preparation, *e.g.,* securing affidavits, needed to oppose a motion for summary judgment.").

**[4]** Because adequate notice was not given within the period specified by the rules, the district court was without power to enter summary judgment sua sponte.**⁵**

B

**[5]** Additionally, Norse did not have a "full and fair opportunity to ventilate the issues prior to the district court's summary judgment on the [his] claims." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (internal quotation marks omitted).

Norse told the district court that he wanted to call attendees of the Council meetings as witnesses to testify about whether Norse actually disrupted them. In particular, Norse wanted to present testimony about whether the 2004 whisper was audible. And he wanted to present evidence that other people acting similarly to him were not ejected from the 2004 meeting. He explained that he had not been able to prepare deposition testimony or otherwise create a record in time for the hearing but was prepared to call witnesses at trial concerning these issues.

**[6]** The district court rejected Norse's requests and did not

---

⁵We are mindful that the 10-day requirement specified in Rule 56 will be removed in December 2010. The revised rule does not establish a specific time requirement unless "set by local rule . . . or court order[ ]," but it requires a district court contemplating sua sponte judgment to provide "notice and a reasonable time to respond." We need not decide what effect the court's order or the Northern District local rules would have in the absence of a specific national rule. Nor do we need to decide whether the notice would have been "reasonable" under the revised rule. In all cases, however, district courts should exercise special care in providing notice when contemplating granting summary judgment sua sponte on the eve of trial after the dispositive motion deadline has passed.

permit him the time to compile evidence for the court. Norse received neither the 10-days notice nor a full and fair opportunity to ventilate the issues, so we must reverse the district court's grant of summary judgment. *See United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989).

## C

**[7]** Before ordering summary judgment in a case, a district court must not only provide the parties with notice and an opportunity to respond to adverse arguments, it must also rule on evidentiary objections that are material to its ruling. *See Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1029 (9th Cir. 2010) (acknowledging this rule, but noting it is subject to harmless error analysis). In this case, the district court failed to rule on Norse's evidentiary objections material to its ruling.

Rule 56 requires the parties to set out facts they will be able to prove at trial. While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence. *See* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *Celotex Corp.*, 477 U.S. at 324. This requirement is no less applicable where the district court's summary judgment is granted sua sponte.

Norse had stated three relevant evidentiary objections. First, he filed a motion in limine, seeking to exclude all evidence related to all incidents involving him at city council meetings—other than the 2002 and 2004 meetings—as irrelevant, prejudicial, and improper character evidence. Second, he objected to the City's attempt to introduce evidence of some of these incidents via written minutes as double hearsay. And third, he objected that the videos did not accurately portray

the meetings because they were only excerpts. The district court failed to issue a final ruling on any of these objections.[6] In fact, the court considered video evidence not only of the 2002 and 2004 meetings but also of what happened at other meetings.

[8] The district court's failure to rule on Norse's evidentiary objections contributed to a greater problem that we face in this case, which is that we do not know what evidence to consider on appeal. The parties did not file any affidavits, depositions, answers to interrogatories, or any other material after the district court scheduled the qualified immunity hearing. We know from the minutes of the pretrial hearing and the qualified immunity hearing that the City gave the district court two DVDs that contained different video recordings of the 2002 and 2004 meetings, as well as excerpts from untold other meetings, and copies of the City Council Rules of Decorum in effect during the 2002 and 2004 meetings. But it is also clear that the district court did not decide which portions of the DVDs were admissible, leaving that question for later resolution. The parties were (and continue to be) confused on precisely what constitutes the actual record and dispute what evidence we should actually consider. Because the record on appeal is inadequate, we are unable to engage in meaningful appellate review. *See Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 954 (10th Cir. 1996) (concluding that court of appeals is unable to review an issue if the record is not adequate); *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995) (remanding issue of qualified immunity when appellate record was inadequate to assess the defense).

---

[6]The district court stated that the parties agreed that the videotapes "depict what occurred at the meetings." But Norse's objection was that they were incomplete, and therefore did not *accurately* depict what occurred at the meetings. Whether or not this objection had merit as an evidentiary matter, the district court was required to rule on it.

### D

Most procedural Rule 56 errors are subject to harmless-error analysis. *See, e.g., Kistner v. Califano*, 579 F.2d 1004, 1006 (6th Cir. 1978) (per curiam) (discussing timing of notice and noting that the error is waivable). The error here is not harmless, though, because we do not know what evidence Norse would have presented if he had been afforded adequate notice and opportunity to present his case. As we do not know what admissible evidence forms the record, we cannot conduct an independent review of the record to see whether genuine issues of material fact exist.

**[9]** The district court apparently relied on the videos of the council that were submitted to it as a basis for its decision.[7] However, there are genuine issues of material fact apparent from the recordings, which would entitle Norse to a trial on the merits.[8] A mayor's entitlement to qualified immunity for ejecting a person from a city council meeting "depends on whether a reasonable person in his position, acting on his information *and motivated by his purpose*, would have known that ejecting [the attendee] violated his clearly established rights." *Hansen v. Bennett*, 948 F.2d 397, 400 (7th Cir. 1991) (emphasis added); *see also Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) ("In cases in which a constitutional violation depends on evidence of a specific intent, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." (internal quo-

---

[7]In its order directing the parties to appear to argue qualified immunity, the court stated that: "In this case, there are video tapes of the incidents in question and both parties have agreed that they are admissible and presumably agree they accurately depict what occurred. Therefore, the facts appear undisputed."

[8]As indicated earlier, we are uncertain as to what portions of the DVDs the court considered in making its ruling. For the purposes of this discussion, we assume that some portions of the DVDs submitted to us contained the same footage of the two council meetings as viewed by the district court.

tation marks omitted)). The DVDs show triable issues of fact as to whether Norse was impermissibly ejected because of his viewpoint rather than his alleged disruptiveness.

As the Seventh Circuit wrote in a very similar case,

> [T]he defendants argue that their appeal cannot present a factual question because the record includes a tape recording and transcript of the city council meeting. As a result, the parties do not disagree about what [the attendee] said or did, what [the Mayor] said or did, or what generally transpired at the meeting. Be that as it may, the record does not enable us to determine the factual issue of [the Mayor]'s intent; we would need a transcript of his thoughts for that. In so holding, we are mindful that "[s]ummary judgment is not defeated merely because issues of motive or intent are involved." *Jackson v. Elrod,* 881 F.2d [441,] 443 [(7th Cir. 1989)]. We do not hold that [the Mayor]'s intent is metaphysically unknowable, but that there is a genuine factual dispute on the question.

*Hansen*, 948 F.2d at 400 (fifth alteration in *Hansen*).

**[10]** Of course, different viewers of the tape may draw different conclusions, and that is precisely why summary judgment was inappropriate here—at the summary judgment stage, the non-moving party is entitled to have permissible inferences drawn in his or her favor. Here, applying our traditional summary judgment analysis, we conclude there are genuine issues of material fact present on the video that preclude summary judgment.[9]

---

[9]We do recognize that the proximity of trial may have led the district court to believe that summary judgment rules did not apply, and we are aware that the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

### III

The City argues, in the alternative, that it is entitled to judgment as a matter of law, either on the pleadings or based on other undisputed facts. We may, of course, affirm the district court on any basis supported by the record. However, we must reject the City's arguments, except as to one defendant.

### A

The City contends that only certain portions of its meetings are limited public forums and that no members of the public have any First Amendment rights at all once the public comment period has concluded. The City cites no support for this proposition, and there is none.

**[11]** In *City of Norwalk*, we held that city council meetings, once open to public participation, are limited public forums. 900 F.2d at 1425. A council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech—as long as content-based regulations are viewpoint neutral and enforced that way. *Id.*; *see also Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) ("[L]imitations on speech at [city council] meetings must be reasonable and viewpoint neutral . . . ."); *accord Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004).

**[12]** What a city council may not do is, in effect, close an open meeting by declaring that the public has no First

---

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This opinion is not intended to limit the times at which a district court might address the question of qualified immunity, sua sponte or otherwise. But, whether the district court is ruling before trial or after trial, it must carefully consider its role in construing evidence and the applicable law, abide by the normal procedural requirements associated with that stage of litigation, and ensure that the parties have had a full and fair opportunity to be heard.

Amendment right whatsoever once the public comment period has closed. As we explained in *Norwalk*, the entire city council meeting held in public is a limited public forum. But the fact that a city may impose reasonable time limitations on speech does not mean it can transform the nature of the forum by doing so, much less extinguish all First Amendment rights. A limited public forum is a limited public forum. Perhaps nothing more, but certainly nothing less. The City's theory would turn the entire concept on its head.

**[13]** Thus, even though we can tell from the face of the amended complaint that Norse's provocative gesture was made after the public comment period closed, Norse still had a First Amendment right to be free from viewpoint discrimination at that time.[10]

The City's argument proves the danger of its theory. The City contended at oral argument before us that, because the public had no First Amendment rights after the public comment period had closed, the Council could legitimately eject members of the public who made a "thumbs down" gesture, but allow members of the public who made a "thumbs up" gesture to remain.[11]

---

[10]We note that we have been unable to find a single First Amendment case where a person has the right to be in a place but has no First Amendment rights once there. Rather, the First Amendment test itself accounts for the nature of the forum and, at its most restrictive, only permits viewpoint neutral restrictions that are "reasonable in light of the purpose served by the forum." *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001) (internal quotation marks omitted); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983); *see also Morse v. Frederick*, 551 U.S. 393, 406 n.2 (2007) ("[S]tudent First Amendment rights are applied in light of the special characteristics of the school environment." (internal quotation marks omitted)); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.").

[11]When queried at oral argument whether that action would constitute classic viewpoint discrimination, the City responded that it was "just human nature."

We decline the City's invitation to rewrite First Amendment law to extinguish the rights that citizens have when they attend public meetings.

B

We also decline the City's invitation to rewrite the rule announced in *Norwalk*. 900 F.2d at 1424-26. There, we held that a city's "Rules of Decorum" are not facially over-broad where they only permit a presiding officer to eject an attendee for actually disturbing or impeding a meeting. *Id.*

In this case, the City argues that cities may define "disturbance" in any way they choose. Specifically, the City argues that it has defined any violation of its decorum rules to be a "disturbance." Therefore, it reasons, *Norwalk* permits the City to eject anyone for violation of the City's rules—rules that were only held to be facially valid to the extent that they require a person actually to disturb a meeting before being ejected. We must respectfully reject the City's attempt to engage us in doublespeak. Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption. The City cannot define disruption so as to include non-disruption to invoke the aid of *Norwalk.*

C

**[14]** The city officials are not entitled to absolute immunity. Local legislators are absolutely immune from liability under § 1983 for their legislative acts. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). But "not all governmental acts by . . . a local legislature[ ] are necessarily legislative in nature." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Thus, we must determine whether the actions of the Council members, when

"stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Id.* at 55.

**[15]** In this Circuit, we have developed a four-part test to determine whether an action is legislative in nature. We consider "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (internal quotation marks omitted). "Whether an act is ad hoc can depend on whether it is aimed at a few people or many, and whether an act bears all the hallmarks of traditional legislation can depend on whether it is ad hoc." *Id.* at 1220 n.4.

**[16]** In this case, we are dealing with city officials who ejected one individual from City Council meetings. Separately, and with regard to his argument for municipal liability, Norse argues that the officials were formulating policy. We need not determine whether the ejections "effectuate[d] policy," however, *see id.* at 1220, because the second, third, and fourth factors clearly point to this being an administrative rather than legislative act. Thus, Krohn, Kennedy, and Fitzmaurice are not entitled to absolute immunity for their part in removing Norse from the meetings. Although the record is incomplete, it appears that in both 2002 and 2004 Norse was singled out for expulsion and arrest. Mayors Krohn and Kennedy did not take any formal legislative action, but rather ordered Norse out of the room. And both expulsions lacked the hallmarks of the legislative process. With respect to the 2002 arrest, Krohn ordered Norse to leave on Fitzmaurice's motion without any debate. The motion was predicated on the "dignity" of the council rather than the council's performance of its obligations to the citizens of Santa Cruz. *See id.* at 1223. And with respect to the 2004 arrest, the record does not reveal a motion based even on dignity, let alone a legislative decisionmaking process. Thus the decisions to expel Norse were

administrative, not legislative, so the defendants are not entitled to absolute immunity. *See Vacca v. Barletta*, 933 F.2d 31 (1st Cir. 1991) (holding that the Chair of a school committee was not absolutely immune from suit over his actions in removing another committee member from a meeting).

D

**[17]** The district court dismissed the case against Santa Cruz based on its determination that Norse's constitutional rights were not violated. The City urges us to affirm this dismissal on the basis that Norse failed to allege any facts that could support municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Norse argues that municipalities can be liable under § 1983 for single decisions taken by municipal policymakers. But the question of whether the two ejections constituted an act or acts of official government policy is a question of fact appropriately decided on a more fully-developed record. The City is not entitled to summary judgment on this question.

E

As against officer Baker, Norse alleges claims of false arrest and excessive force. The City argues that Baker is immune from suit if reasonable officers in his position could have disagreed on the issue of probable cause. We agree with the City. The existence of probable cause is dispositive as to false arrest and excessive force claims.

**[18]** "To prevail on [a] § 1983 claim for false arrest . . . [a plaintiff must] demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam). Moreover, a government official is entitled to qualified immunity on a false arrest claim if a reasonable officer in his position could have believed that probable cause existed. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009). While

Norse alleges in his pleadings that there was no probable cause to arrest him in 2002 or 2004, he nonetheless alleges facts that could have led a reasonable officer to believe that probable cause existed for his arrest. In both 2002 and 2004, Norse actually spoke verbally, in violation of the Rules of Decorum, in response to Council members' attempts to eject him from the Council chambers. Based on these facts, a reasonable officer could have believed that probable cause existed to arrest Norse for violation of California Penal Code § 403, disturbance of a public assembly or meeting. Therefore, Baker is entitled to judgment on the false-arrest claim.

Norse also alleges he was subject to excessive force. An excessive-force claim that arises in the context of an arrest is properly characterized as one invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "To determine if a Fourth Amendment violation has occurred, we must balance the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances." *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010). The only force alleged in the complaint was Baker's order that Norse place his hands behind his back at the 2002 meeting. Even though Norse was being arrested for, at most, a minor misdemeanor offense, we cannot say that a reasonable officer in Baker's position would have known that this limited use of force was unreasonable: Norse had refused to leave the meeting of his own accord, a fact also alleged in the complaint, and a reasonable officer could have believed that probable cause existed for the arrest. Therefore, judgment must be entered in favor of Baker on the claims asserted against him.

IV

For the foregoing reasons, we reverse the dismissal of Norse's § 1983 claim as to his First Amendment claims. We

affirm the dismissal of Norse's claims against Baker. We remand with instructions for the district court to rule on Norse's pending motion in limine to exclude evidence of Council meetings other than the 2002 and 2004 meetings mentioned in his complaint, and to hold the trial that it had originally scheduled for March 26, 2007. In accordance with our precedent, the district court may entertain a post-trial motion for judgment as a matter of law on the issue of qualified immunity after the facts are resolved at trial. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).

We need not, and do not, reach any other issues urged by the parties. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**

---

Chief Judge KOZINSKI, with whom Judge REINHARDT joins, concurring:

I join Judge Thomas's opinion because it's clearly right. I write only to observe that, even after the procedural irregularities that deprived Norse an opportunity to present evidence, it's clear that the council members aren't entitled to qualified immunity. In the Age of YouTube, there's no need to take my word for it: There is a video of the incident that I'm "happy to allow . . . to speak for itself." *Scott* v. *Harris*, 550 U.S. 372, 378 n.5 (2007); *see* http://www.youtube.com/watch?v= ZOssHWB6WBI (last visited Nov. 16, 2010). This video (also found in the record) clearly shows that Norse's sieg heil was momentary and casual, causing no disruption whatsoever. It would have remained entirely unnoticed, had a city councilman not interrupted the proceedings to take umbrage and insist that Norse be cast out of the meeting. Councilman Fitzmaurice clearly wants Norse expelled because the "Nazi

salute" is "against the dignity of this body and the decorum of this body" and not because of any disruption. But, unlike der Führer, government officials in America occasionally must tolerate offensive or irritating speech. *See Cohen* v. *California*, 403 U.S. 15 (1971); *Duran* v. *City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990).

The Supreme Court long ago explained that "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker* v. *Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969). Even in a limited public forum like a city council meeting, the First Amendment tightly constrains the government's power; speakers may be removed only if they are actually disruptive.

We've said so twice. In *White* v. *City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990), we explained that speech must "disrupt[,] disturb[ ] or otherwise impede[ ] the orderly conduct of the Council meeting" before the speaker could be removed. *Id.* at 1426. And in *Kindt* v. *Santa Monica Rent Control Bd.*, 67 F.3d 266 (9th Cir. 1995), we upheld a spectator's ejection from a public meeting only because he was "disrupting the proceedings by yelling and trying to speak when it was not time for" discussion. *Id.* at 271. Had he been given a chance, Norse could no doubt have presented lots more evidence that he never disrupted the Santa Cruz council meeting, but what would have been the point? The video speaks for itself: Norse raises his hand in a brief, silent protest of the mayor's treatment of another speaker. The mayor ignores Norse's fleeting gesture until Councilman Fitzmaurice throws a hissy fit.

"Listeners' reaction to speech is not a content-neutral basis for regulation. . . . Speech cannot be . . . punished or banned[ ] simply because it might offend a hostile" member of the Santa Cruz City Council. *Forsyth Cnty., Ga.* v. *Nationalist Movement*, 505 U.S. 123, 134-35 (1992). The council members should have known that the government may *never* suppress

viewpoints it doesn't like. *See Rosenberger* v. *Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Though defendants point to Norse's reaction to Councilman Fitzmaurice as the "disruption" that warranted carting him off to jail, Norse's calm assertion of his constitutional rights was not the least bit disruptive. The First Amendment would be meaningless if Councilman Fitzmaurice's petty pique justified Norse's arrest and removal.

Even viewing the facts most favorably to the city council members, their behavior amounts to classic viewpoint discrimination for which they're not entitled to qualified immunity. And that's what the district court should have held when it set about resolving qualified immunity as a matter of law. If it was going to take it upon itself to grant summary judgment to anyone on that issue, it should have been to Norse. On remand, the district court can set things right by holding, as a matter of law, that the city council members are not entitled to qualified immunity, and proceeding to assess damages.